## Case No. 13,041.
### SMITH v. ELLIOTT.
[9 Blatchf. 400; 5 Fish. Pat. Cas. 315; 1 O. G. 331; Merw. Pat. Inv. 193.] [1]
Circuit Court, S. D. New York. Feb. 7, 1872.

PATENTS—CORDED ELASTIC FABRIC—NOVELTY.

1. The reissued letters patent granted to William Smith, June 30th, 1868, division B, for an "improvement in corded elastic fabrics," the original letters patent having been granted to him April 5th, 1853, and subsequently extended, are void for want of novelty.

2. The claim of such reissued patent, namely, "the corded fabric, substantially as hereinbefore described, in which the cords are elastic, and are held between the upper and under weft threads, and separated from each other by the interweaving of the upper and under weft threads with the warp threads, in the spaces between the cords, and only there, substantially as above shown," is anticipated by a like fabric which existed before, although not woven of a width, or fineness, or elasticity, suitable to be used for the gores of boots, and not so used, and although the fabric introduced by the patentee possessed the qualities which fitted it to be used for the gores of boots, and it was so used, and displaced other elastic fabrics before used for that purpose.

[Cited in Meyer v. Pritchard, Case No. 9,517; Kilbourne v. W. Bingham Co., 1 C. C. A. 617, 50 Fed. 699.]

3. The fabric not being new, its application to a new use was not invention.

[Cited in Ansonia Brass & Copper Co. v. Electrical Supply Co., 144 U. S. 18, 12 Sup. Ct. 604.]

[This was a bill in equity by William Smith against Henry Elliott, administrator of Joseph T. Whitehouse.]

[Final hearing on pleadings and proofs. Suit brought on letters patent [No. 9,653] for an "improvement in corded elastic fabrics," granted to William Smith, April 5, 1853; reissued, in three divisions, June 30, 1868 [Nos. 2,843, 2,844 and 3,014], and extended for seven years from April 5, 1867. The nature of the invention in controversy is fully set forth in the opinion.] [2]

Thomas A. Jenckes, for plaintiff.

George Gifford, Benjamin Dean, and William C. Witter, for defendants.

WOODRUFF, Circuit Judge. This case and seven other cases, brought by the same complainant against different defendants, were argued and submitted together, upon like pleadings and upon the same proofs, under a stipulation that the proofs taken in either should be read or used in all. The bills of complaint are filed to restrain the respective defendants from infringing a patent granted to the complainant, April 5th, 1853, and subsequently extended and twice reissued. The patent was last reissued to the

---

1 [Reported by Hon. Samuel Blatchford, District Judge, and by Samuel S. Fisher, Esq., and here compiled and reprinted by permission. The syllabus and opinion are from 9 Blatchf. 400, and the statement is from 5 Fish. Pat. Cas. 315. Merw. Pat. Inv. 193, contains only a partial report.]

2 [From 5 Fish. Pat. Cas. 315.]

complainant in 1868, in three divisions:—one, described as for "improvements in weaving," in which the process is claimed; another, entitled, "improvements in looms for weaving," wherein a certain part of the loom, in combination with mechanism, is claimed; and a third, in which the specification is entitled, "improvement in corded elastic fabrics," in which the fabric is claimed by the complainant as his invention. The bills allege, that the defendants, respectively, have infringed the last named division of the reissued patent, for the new fabric, which is dated June 30th, 1868, and is called, "division B"; and they pray an injunction and an account. Without setting out the answer, it is sufficient to say, that the defendants rest their defence on the denial of the novelty of the invention, and upon proofs tending to establish that a fabric answering fully to the description of the fabric described and claimed in the complainant's specification, was made by many persons, and was in public use and on sale in this country, several years before the alleged invention by the complainant.

The description in the specification first gives the loom in which the fabric is made, and its operation, then mentions the manner in which corded fabrics have theretofore been produced, and the peculiarities of such fabrics, and then proceeds to describe the fabric claimed to be new. Modified by a disclaimer, made pending these suits, the description is as follows: "The features which distinguish my improved corded fabric, from all others before known, are as follows, viz.: The cords are longitudinal, and may be termed cord warps. They are separated from each other by the interweaving of the warp threads and weft · threads, * * * between the cords only, and not over and under the cords; and the cords are covered on both surfaces by weft threads only. The weft threads are not interwoven with the cords, * * * but each weft thread passes either over or under all the cords, instead of passing first under one cord, and then over the other, and so on across the fabric; and it is interwoven only between the cords, and only so interwoven with the warp threads. The fabric being so constituted at every part of the length, the cords are griped between two weft threads, one above and the other below, which two weft threads are drawn each half way around each one of all the cords, by being interwoven with the warp threads, in the several spaces between the cords." Then, proceeding, in terms, to limit himself to such fabrics when the "cords" are elastic, the patentee states his claim thus: "What, therefore, I claim as my invention, in this subdivision of my patent, is, the corded fabric, substantially as hereinbefore described, in which the cords are elastic, and are held between the upper and under weft threads, and separated from each other by the interweaving of the upper and under weft threads

with the warp threads, in the spaces between the cords, and only there, substantially as above shown."

The proofs herein indicate, that the plaintiff, at or about the date of his patent, produced a woven elastic fabric of great utility, adapted to purposes for which no similar fabric before made in this country was suitable, possessing a beauty of finish and texture most desirable and attractive, and having firmness and durability combined with great elasticity, to a degree not before found in any fabric in the market. Although the purposes for which it might be used were several, its most important use was for gores inserted in the tops of gaiter boots, to be stretched in drawing on the boot, and, by contraction, binding the top of the boot firmly around the ankle, after the boot was drawn on. Made of silk, or silk and cotton, warp and weft, the latter covering elastic cords, (india rubber being, in practice, used therefor,) the threads of silk or cotton being of great fineness, the fabric has a fine glossy appearance. The cords lying very close to each other, the whole is not greatly unlike very rich, heavy, corded silk goods found in the stores. The manner in which the weft threads are tightly bound upon the enclosed elastic cords, by the interweaving of the warp threads therewith, holds the cords so firmly that they cannot slip or slide; and, hence, the fabric can be cut, and its cut edge may be attached, by sewing, to leather or cloth, &c., without any withdrawing of the elastic cords, when stretched in use. By reason of its excellence in these and, perhaps, other respects, the fabric has gone into extensive use; and it is alleged that it has occupied the market, and, for the especial purpose of elastic gores in gaiter boots, is the only fabric now used.

The complainant being the meritorious cause or agent in such a result, whether the same is due either to his industry as a laborer, his skill as a weaver, his judgment as an observer and experimenter, or his invention as an originator of either machinery, process or product, he is entitled to very favorable consideration; and a certain sense of justice would seem to require that, if possible, an adequate reward for the benefit derived therefrom by the public should be secured to him. The law, however, gives no monopoly to industry, to wise judgment, or to mere mechanical skill in the use of known means, nor to the product of either, if it be not new. These are within the proper field of competition, and open to all. In general, they will, in that competition, be justly appreciated, and will command their proper remuneration, if usefully employed. It is invention of what is new, and not comparative superiority, or greater excellence, in what was before known, which the law protects, as exclusive property; and it is that alone which is secured by patent. Whether the results attained by the complainant,

above mentioned, are due to improved machinery invented by him and secured to him by patent, or are due to a peculiarity in the process of manufacture invented by him and patented, it is unnecessary, in this case, to enquire. For aught that appears here, either of these may be true; but the defendants are not charged with violating his rights as an inventor of either machine, loom, or process, but only as invading his alleged exclusive title to the product itself.

On that subject, it should be observed, that there are many changes which may be suggested by the judgment or taste of the manufacturer, or by the particular uses to which the article produced is to be applied, which are not invention; and many exhibitions of superior skill, in producing an article of greater excellence, which are not invention. Thus—if a fabric be already known and in use, change of color, change of mere material, change in its degree of fineness, or in the fineness of parts thereof, if these changes involve nothing new in construction, in the relation of its parts, in the office or function of either part or of the whole, do not constitute invention, although, for many purposes, these may constitute the greater excellence of the fabric. Indeed, in the present case, not even such changes are claimed, in the complainant's specification, to have been made; and yet the argument submitted on his behalf dwells largely on peculiarities in the complainant's fabric, as it has actually been made and used, which are of this character only, and largely, also, on the special use to which it has been applied, namely, to the making of gores for boots, and its fitness for such use. But the complainant, in his specification, claims nothing on this ground. In practice, for the making of the fabric, the elastic cords now used are made of vulcanized india rubber, for greater elasticity and, perhaps, greater durability; but the claim of the patent is for any elastic cord, of whatever material; and it is by no means clear, that, when the complainant received his patent, he used vulcanized rubber himself. In practice, for the making of the fabric for shoe gores, silk, upon the upper surface of the fabric, is used, and, no doubt, is required, in order to the beauty and finish desired for that use, and, it may be, for other uses; but the claim of the patent is for any warp threads and weft threads, and this will embrace any fibrous materials from which such threads may be wrought. In practice, the threads used for warp and weft are very fine, by which, first, the cords are permitted to lie very close to each other, and, second, their covering by the weft is very smooth, and so the whole fabric has an evenly and compactly corded surface: but the claim of the complainant embraces warp threads and weft threads of whatever quality or fineness, only limited by the practicability of weaving them in the manner pointed out. In practice, few threads of warp are woven or interlock-

ed between the cords; but the claim of the complainant includes warp threads interwoven with weft threads between the cords, whether such warp threads be few or many. In practice, when such fabric is intended for goring for boots, it is woven of a width corresponding with the length of the gore; but the claim of the complainant makes no discrimination in respect of the width of the fabric claimed. In fact, it is made, for other purposes, exceedingly narrow, and, within the description in the patent, it may be made of any width desired, and for any purpose. In practice, its special adaptation for gores of boots, and its value for that use, is illustrated in the particulars wherein they require fineness, smoothness, finish, durability and, especially, very great elasticity; but the claim of the complainant is not for any peculiarities in these respects, nor is it for an improved gore at all. If it were conceded that the complainant might have obtained a patent for an improved elastic gore for boots or shoes, founded upon facts appearing in the proof herein, it would, for the purposes of this case, be necessary to say, that he has not done so.

Once more, if the fabric be not new, the application of it to a new use is not invention, when nothing novel is required for its adaptation. If the complainant had first invented the combination of an elastic gore with the other parts of a boot or shoe, there might be therein something which was the proper subject of a patent; but this has no bearing on the question, whether the elastic fabric of which the gore is made is the complainant's exclusive property.

Aided by the foregoing observations, how stands the present case, upon the proofs? The complainant must abide by the specification and claim which he has made. If he has rights which, under that specification and claim, are not protected, the court cannot aid him. The question here is—was the fabric, which he has described and claimed to be his invention, new?

The claim is, for "the corded fabric, substantially as hereinbefore described, in which the cords are elastic, and are held between the upper and under weft threads, and separated from each other by the interweaving of the upper and under weft threads with the warp threads, in the spaces between the cords, and only there, substantially as above shown." This claim is, of course, to be construed with reference to the preceding specification; and above I have stated what is material to its full meaning. Width of fabric is not of the substance of this specification or claim. They embrace all widths. Degree of elasticity is of no significance, nor is fineness or coarseness of threads, nor the material of either the threads or cords, nor the number of weft threads, nor the number of warp threads between each cord. All these may be varied indefinitely, and yet be within the specification, and within this claim; and the

uses to which the completed fabric is adapted are in no wise suggested as any test of its likeness to what is claimed, or as at all entering into the complainant's alleged invention.

It is shown, on the part of the defendants, that, several years prior to the alleged invention, a fabric was made extensively, and was in general use, which answers in every particular to this claim of the complainant. It was chiefly used for suspenders, braces, garters, and the like. It was generally made of cotton warp and weft threads, and cords of native india rubber. True, it was not, in general, of either a color, fineness, width or finish which was suitable for the gores of boots. But it was a "corded fabric," in which the cords were "elastic," in which the cords were "held between the upper and under weft threads, and separated from each other by the interweaving of the upper and under weft threads with the warp threads," and in which this interweaving was "in the spaces between the cords, and only there." The testimony of the witnesses is to complete identity, in these respects, with the fabric claimed. A careful examination of the fabrics fails to disclose any difference in the crossing of the threads, in the interweaving, or in any other respect, which discredits or contradicts the witnesses; and they are uncontradicted, in fact, on these points, by other testimony. A short mode of disposing of this evidence was repeatedly suggested by the complainant, in the conduct of the examinations before the examiners, namely, by imputing to witnesses fraud and perjury—conduct, on his part, in the course of such examinations, deserving severe reprehension; and it may be added, that the proceedings before the examiners are returned to the court abounding in improper remarks, prolix statements touching the conduct of counsel, officers of the patent office, witnesses, and others, which are not proof, and which ought to have been expunged at the cost of the complainant, before the case was brought to a hearing, or the proofs printed for the use of the court.

The court must deal with the uncontradicted testimony according to the ordinary rules by which evidence is to be weighed; and it is quite clear, that the defendants have established the facts above stated. True, these fabrics do not appear to have been woven of a width sufficient for gores of boots. The material does not appear to have been of suitable fineness to render the fabric attractive for that purpose, although there is some evidence which may qualify this observation. Such a use does not distinctly appear to have been made of those fabrics, until the complainant commenced the manufacture. It is, at least, doubtful, whether those fabrics had the elasticity which is required for shoe gores; and, in other particulars, there were differences, not in construction or kind, but only in degrees and qualities, not of the substance of the invention claimed.

If the complainant's patent had been prior in date to the manufacture of these fabrics, and was otherwise valid, there is not a doubt, there can be none, that these fabrics are directly within the claim of the complainant, and would have been plain infringements of his patent. This is a rational and, in general, when they include the whole of an alleged invention, a conclusive test of the originality of the latter.

It would be a work of supererogation, as well as of great labor, to recite the testimony which establishes that such fabrics were made before the complainant even began his experiments. It runs through the mass of the testimony given by the witnesses examined by the complainant as well as those examined by the defendants. Those fabrics were made in various colors, and with various differences in ornamentation; some with a large number of threads of warp between the cords, so interwoven as to produce cloth in the intermediate spaces, and some with few threads binding the upper and lower weft threads together; some with a selvage like the complainant's and some with a round-corded selvage, and some with a cloth edge, which, when it was contracted, formed a ruffle. But the whole substance of the complainant's alleged invention is there, sometimes in its simple and literal exactness, and sometimes with accessories.

I am compelled to say, that the fabric, as claimed by him in the specification annexed to his patent, was not new, and that these actions cannot be maintained. The bills of complaint must, therefore, be dismissed.

[For other cases involving this patent, see note to Smith v. Glendale Elastic Fabrics Co., Case No. 13,050.]