### Rosenwasser and others *v.* Berry.

*(Circuit Court, D. Maine. January 17, 1885.)*

PATENTS FOR INVENTIONS—ROSENWASSER PERCOLATOR—PATENT No. 256,504—INVENTION.

Patent No. 256,504, granted to Nathan Rosenwasser, April 18, 1882, for improvements in percolators for filtering purposes, or for making fluid extracts from drugs, is void for want of invention.

In Equity.

*William Henry Clifford,* for plaintiffs.

*Wilbur F. Lunt,* for defendant.

COLT, J. This suit is brought for an alleged infringement of letters patent No. 256,504, granted to Nathan Rosenwasser, April 18, 1882, for improvements in percolators for filtering purposes, or making fluid extracts from drugs. Percolators are old. The main elements described in the Rosenwasser patent, consisting of an elevated reservoir or vessel, a lower vessel containing a perforated plate or diaphragm on which the drug rests, and a tube or pipe connecting the two vessels, are old. In the old percolators the lower vessel is often

made in the shape of a funnel, and the drug is charged at the wide opening on top. A cap-piece may then be put on which connects with the tube or pipe attached to the reservoir. The discharge takes place through the restricted opening at the bottom. Rosenwasser inverts this funnel-shaped vessel, and then charges the drug through the wide opening at the bottom through which the discharge also takes place. In filling, the wide, open end is turned upwards and the drug put in. A diaphram is then inserted on which the drug rests. The large end is then turned downwards and percolation begins. By this means, as set out in the specification, the upper part of the percolating vessel is closed, so that any increased or variable degree of pressure can be brought to bear on the menstruum, depending on the elevation of the reservoir.

The claim is as follows:

"The combination with a vessel, G,, and adjustable tube, F, of a percolator, A, having a large filling and discharging orifice at its lower end, and a restricted opening, B, at its upper end, with which connects the lower end of the adjustable tube or pipe, F, substantially as set forth."

It will be observed that the claim omits to include a diaphragm as an element of the combination. A diaphragm is necessary to prevent the drug falling out from the opening at the lower end of the vessel. A diaphragm, however, is described in the specification and seen in the drawings. The plaintiffs contend that, consequently, it is made a part of the claim by legal construction. If we should adopt this view, it is still extremely doubtful if the machine is operative without the use of a second diaphragm, which is nowhere mentioned in the patent. When the large open end of the lower vessel is turned upwards for the purpose of filling, it would seem evident that a portion of the drug will fall out of the small opening at the other end unless there is another diaphragm to prevent it. It is possible that the drug may be so coarse, or the opening so small, that but little, if any, will escape. Practically, however, we think the evidence shows that two diaphragms are a necessity. It is a most significant fact that the percolators sold by the complainants have two diaphragms.

But in view of the prior state of the art, we fail to find any invention in the Rosenwasser patent. The most that Rosenwasser can claim is an improvement which consists in closing the upper part of the vessel containing the drug, by which means an increased or variable pressure can be brought to bear upon the menstruum, this result being accomplished by making the large, open end at the bottom of the vessel the charging and discharging mouth. That this is the scope of the improvement is apparent on reading the patent. No claim is made in the patent for an adjustable diaphragm. If Rosenwasser had been the first to close the upper part of the percolating vessel, he might lay claim to an invention, but we find a vessel airtight at the upper end described in Boullay's filter, or percolator, United States Dispensatory, by Wood & Bache, (13th Ed. 1870,) p.

932, and in the Real Press, described in Geiger's Handbuch der Pharmacie, published in 1830, vol. 1, p. 157.

The invention of Rosenwasser narrows itself down to the mode of charging the drug. Instead of filling the drug from the top of the percolating vessel, and then inserting a diaphragm, he turns the bottom of the vessel upwards, fills in the drug, inserts the diaphragm, and then turns the vessel back. To fill a vessel from the bottom instead of from the top, does not seem to me to constitute invention. The design of the patent laws is to reward those who make some substantial discovery or invention, which adds to our knowledge in the useful arts. *Atlantic Works* v. *Brady*, 107 U. S. 192; S. C. 2 Sup. Ct. Rep. 225. Not every improvement is invention; but to entitle a thing to protection it must be the product of some exercise of the inventive faculties, and it must involve something more than what is obvious to persons skilled in the art to which it relates. *Pearce* v. *Mulford*, 102 U. S. 112. These considerations are independent of the fact that in Beindorf's device, described in Geiger's work, *supra*, it appears that the percolating cylinder was inverted after filling. We do not think the complainants show the translation from Geiger, introduced by the defendant, to be incorrect. At all events, it may be said that the cylinder in the device of Beindorf might be charged from the lower end. There is also considerable evidence going to prove that a percolator embodying the Rosenwasser patent was used by one Nietsch, in New York, as early as 1873, and by the defendant Berry, in 1878, in his shop at Biddeford, Maine. In view of the other conclusions we have reached, it becomes unnecessary to decide whether this last defense has been proved. The bill must be dismissed; and it is so ordered.

----

## THE SUE.

*(District Court, D. Maryland.  February 2, 1885.)*

1. CARRIERS OF PASSENGERS—SEPARATION OF PASSENGERS ON ACCOUNT OF RACE OR COLOR.

    On a night steam-boat, plying on the Chesapeake bay, colored female passengers may be assigned a different sleeping cabin from white female passengers.

2. SAME—ACCOMMODATIONS MUST BE EQUAL.

    The right to make such separation can only be upheld when the carrier, in good faith, furnishes accommodations equal in quality and convenience to both alike.

In Admiralty.  Libel *in rem.*

*A. Stirling, Jr.,* and *Alexander Hobbs,* for libelants.

*John H. Thomas,* for respondent.