LETTELIER v. MANN et al.

(Circuit Court, S. D. California. January 30, 1899.)

No. 697.

1. PATENTS—INVENTION—IMPROVEMENT OF EXISTING MACHINE.

Merely changing the location of parts in a successful machine, though it may add to its utility, involves only the exercise of mechanical skill, and does not constitute invention which will sustain a patent.

2. SAME—ANTICIPATION—KNOWLEDGE OF PRIOR DEVICE.

In considering the question of anticipation, it will be assumed that the patentee knew of the alleged anticipatory device when he made his own; and whether or not he in fact had such knowledge is immaterial.

3. SAME—INVENTION—ADAPTING OLD PARTS TO NEW USE.

A change in the size or shape of a part in an existing machine, so as to adapt the part to a new purpose, such as would occur to a mechanic of ordinary skill, does not constitute invention.

4. SAME—EFFECT OF PATENT AS EVIDENCE.

The rule that a patent is prima facie evidence of novelty and invention is merely a rule of evidence, and, while it casts the burden of proof on an alleged infringer, does not preclude the courts from declaring what constitutes novelty and invention.

5. SAME—MACHINE FOR MAKING BOX BINDING STRIPS.

The Lettelier patent, No. 482,484, for a machine for making box binding channel strips, so far as it shows a change of the location of the cutters and formers from the center of the shafts, as existing in a prior machine, to the ends, outside the bearings, though of utility, does not disclose invention; and the enlargement of the shoulders on the insertion rollers to serve as guides for the strip being channeled is merely a mechanical adaptation of the part as existing in the prior machine to a new use, which does not involve patentable invention, and which was anticipated in the device shown in the Nauman patent, No. 421,961.

This was a suit in equity by John G. Lettelier against William Mann and others for the alleged infringement of a patent.

H. C. Dillon, for complainant.

James E. Knight and C. K. Holloway, for defendants.

WELLBORN, District Judge. This is a suit for an injunction against, and damages on account of, alleged infringements of patent No. 482,484, on a machine for making box binding channel strips. The answer to the bill sets up, among other defenses, lack of novelty, or, more specifically, that the complainant's patent was anticipated by numerous other patents, and also by a machine known as the "Weston machine," constructed by Norton Bros., in Chicago, in March, 1886, for the Weston Basket Manufacturing Company, of San Francisco, Cal.

Complainant, in his application for a patent, outlines his machine thus:

"My invention consists, essentially, of a channel strip forming machine, having its rotary shears and formers arranged on the ends of their respective shafts on the outside of the shaft supporting frame of the machine, in combination with suitable gauges and guides arranged to hold the strip in position, and to discharge the scrap from the machine, and direct the strip through the shears and formers."

The figure given on the next page is a plan view of said machine.

The following extracts from complainant's application, read in con-
nection with said diagram, will serve to explain those parts of his
patent material to this opinion:

"My improved machine, as illustrated, comprises the combination of a
train consisting of the rotary shears, A A', and the series of rotary channel
formers or rollers, B B', C C', D D', and E E' (arranged in pairs, graded with
increasing depth and decreasing width of channel from the shears at the
front of the machine rearwardly), the spreader arc, F, and the grooved
spreader roller, G, arranged in line with the channel rollers and the with-
drawing rollers, H H', and operative mechanism connecting the parts of such
train. * * * In practice, the binding strips are formed of scraps of tin,
which are not of uniform width; and, when fed into the machine, the rotary
shears, A A', cut the strip to the proper width, and pass it on through the
opening between the flat-faced guides, I I', to the bending rollers or formers,
B B', which bend the tin slightly to form an axial channel, and, in turn, pass
the strip on through the opening between the guides, J, J', to the channeling

rollers, C C', D D', and E E', which operate in turn to gradually deepen
the channel to the desired form. The guide, $q^2$, directs the waste scrap out-
ward from the machine, so that, when severed from the channel strip, it falls
to the floor or into some suitable receptacle. * * * The several insertion
rollers, B, C, D, and E are provided with side stops or shoulders, n, ar-
ranged, respectively, with relation to the edge, v, of the rollers, to serve as
stops to engage the edges of the strip being channeled thereby to prevent it
from displacement while being channeled; that is to say, the distance from
each stop, n, to the extreme outer point of the insertion rollers is equal to
one-half of the width of the tin strip which is to be channeled by the machine.
This causes the edges of the strip to abut against the side stops, n, n, and so
hold the strip firmly in position. By this means the machine is caused to form
the channel with its bottom midway between the edges of the strip."

The features of complainant's machine, which he claims as patentable
improvements on the Weston machine, are the location of the cut-
ters and formers at the ends, instead of the centers of the shafts, and
the enlargement of the shoulders on the insertion former, so as to

make them perform the office of guides. With reference to the first of these alleged improvements, complainant's said application contains the following statement:

"Machines with rotary shears and formers have been constructed before my invention; but their operation has not been satisfactory, because the shears and formers were situated on shafts which were provided with a bearing upon each side of the shears and formers, and the strips of scrap tin which were cut from the edge of the strip by the shears would become wound about the shafts, and necessitate the frequent stopping of the machine to remove them therefrom. My invention differs from these prior machines, in that it has its shears and formers mounted upon the outer ends of the shafts, and the inner sides of the shears are arranged close to the frame of the machine: so that there is none of the shaft between the frame and shears for the tin strip to become wound around. Also, the space between the cutting edge of the shears and the frame is made of the width desired for the flat strip out of which the channel strip is to be formed, so that the scrap tin cut from the strip is left on the outside of the frame of the machine, and drops off as soon as severed from the strip to be formed."

Complainant claims, as another advantage of placing the cutters and formers at the ends, instead of centers, of the shafts, that they can be more easily removed and replaced for purposes of cleaning, sharpening, and repairing. The advantage which complainant claims in the shoulders of his machine is that they serve as guides for the channel strip to be formed, and thus equalize its sides.

All of these claimed beneficial results are contested by the defendants, except that cutters and formers outside of the bearings can be more readily removed and replaced, for the purposes indicated, than cutters and formers inside the bearings.

The evidence satisfies me that complainant's patent possesses advantages over the Weston machine in all the particulars mentioned, except as to the shoulders, about which there is doubt; but I am likewise satisfied that the Weston machine was successfully operated. Mr. Gould testified that it worked all right before its shipment from Chicago, in 1886. Mr. Paine testified that he operated it in 1891, and that he could turn out as many channel strips as he could on the Reed machine, which latter was the Lettelier machine. The fact that the Weston machine, built in 1886, was being used as late as 1891, and the testimony of Mr. Paine, as to the amount and character of work it could and did then perform,—32,000 channel strips per day,— completely refute any suggestion that it was a failure. In the Weston machine, it is true, as already stated, the cutters and formers were inside the bearings, while in the one covered by complainant's patent the cutters and formers are outside the bearings. This change, however, was not invention. Smith v. Nichols, 21 Wall. 112; Hill v. Wooster, 132 U. S. 693, 10 Sup. Ct. 228; Dederick v. Agricultural Co., 26 Fed. 755; Adams v. Stamping Co., 28 Fed. 360; Thomson-Houston Electric Co. v. Athol & Orange St. Ry. Co., 83 Fed. 203; Briggs v. Ice Co., 8 C. C. A. 480, 60 Fed. 87; Front Rank Steel-Furnace Co. v. Wrought-Iron Range Co., 63 Fed. 995.

In Briggs v. Ice Co., supra, the court says:

"It is not invention to use an old combination of devices in a new location to perform the same operations when no change or modifications are required to adapt it to the new use, or when only such are required as can be made by

the exercise of ordinary mechanical skill. The case of Aron v. Railway Co., 132 U. S. 84, 10 Sup. Ct. 24, is an apposite illustration of the rule."

The following extract from an opinion by Justice Matthews is peculiarly applicable here:

"As soon as the mischief became apparent, and the remedy was seriously and systematically studied by those competent to deal with the subject, the present regulation was promptly suggested and adopted, just as a skilled mechanic, witnessing the performance of a machine, inadequate, by reason of some defect, to accomplish the object for which it had been designed, by the application of his common knowledge and experience, perceives the reason of the failure, and supplies what is obviously wanting. It is but the display of the expected skill of the calling, and involves only the exercise of the ordinary faculties of reasoning upon the materials supplied by a special knowledge, and the facility of manipulation which results from its habitual and intelligent practice; and is in no sense the creative work of that inventive faculty which it is the purpose of the constitution and the patent laws to encourage and reward." Hollister v. Manufacturing Co., 113 U. S. 59, 5 Sup. Ct. 717.

Complainant has cited a great number of cases, involving changes of location, wherein the patents have been sustained. In most, if not all, of these cases, however, the improvements held to be patentable were believed by the court to involve something more than mere structural changes.

Thus, in Pearl v. Ocean Mills, 19 Fed. Cas. 56, on which complainant seems to place much reliance, the first paragraph of the syllabus, after particularizing the improvements made by the patent in question, proceeds thus:

"These alterations resulted in a considerable diminution of the power required. Many previous experiments with the same end in view had proved unsuccessful. Held, that the greatly improved result attending the change, when viewed in connection with the failure of the many experiments previously made to accomplish similar results by mere structural changes, has a great tendency to prove that these changes involved some functional difference beyond mere mechanical perfection and adjustment."

Again, in Western Electric Co. v. Home Tel. Co., 85 Fed. 649, the court, at page 660, says:

"This patent was not 'the mere carrying forward or new or more extended application of the original thought,' shown in patent No. 321,390, as claimed by defendant's counsel; nor was it 'a change only in form, proportion, or degree, doing substantially the same thing, in the same way, by substantially the same means,' as patent No. 321,390. * * * My opinion is that the patent in suit accomplished an absolutely new and useful result; that it was a pioneer invention."

Again, in Singer Mfg. Co. v. Stewart Mfg. Co., 8 Fed. 920, the court says:

"It was quite desirable and useful to have the means of regulating the tension accessible to the right hand as well as to the left of the operator. Placing the thumb screw at the top of the face plate would do it, if mechanism could be contrived to adjust the disks by the thumb screw at that place. Such mechanism had to be devised before it could be made by mere mechanical skill. Miller devised it, and the effort must have arisen above mechanical to inventive skill. When done, it was new, as distinguished from the old, and appears to have been well patentable."

And yet again, in Marsh v. Manufacturing Co., 16 Fed. Cas. 807, the court says:

"But, in either view, location is a chief feature in the complainant's claims. This, of course, suggests the question: Is the mere location of devices, such devices not being new, patentable? To this the answer must be that it is not. If the result is the same, and nothing new is required to adapt an apparatus to operate in its new location, nothing has been done which can be called 'invention.' If such change of location produced a new combination of devices, producing a new result, then, indeed, something patentable may have been devised; but mere change of location is not invention."

It is impracticable for me to undertake to review in detail all or any considerable part of the cases cited in complainant's briefs. Besides those already mentioned, however, there is one other citation on this point—Mast, Foos & Co. v. Stover Mfg. Co., 85 Fed. 782—which specially invites attention, since complainant says of it:

"This case effectually disposes of the contention that the Weston machine anticipated ours, and the further contention that changing the position of the cutters and formers from the inside to the outside involved no exercise of the inventive faculty, and was a mere structural change."

I cannot agree with this view of said case. The second paragraph of its syllabus is as follows:

"The Martin patent, No. 350,281, for an improvement in windmills, consisting of the substitution for external driving gear of internal gear, which is a combination of internal toothed wheels with the pinion, pitman, or pump of a windmill, was not anticipated by the Perkins mill, which had internal gear similar to that in mowing machines."

Careful examination of the opinion will show that the Martin patent was sustained, not merely because it placed the driving gear in a different location from that occupied by the driving gear in the Perkins mill, but because the driving gears, with their respective combinations, of the two mills, were otherwise essentially different. After pointing out some of the distinctive features of the two mills, the court says:

"In the case of either gear the motion would be constant and noiseless. The Perkins device is, in this respect, similar to the internal gears used in mowing and harvesting machines, spoken of by the court of appeals. It is in no sense, either technically or substantially, a combination of internal toothed wheels with the pinion, pitman, or pump of a windmill, and therefore could no more have suggested either the purpose or the result of the Martin device."

So far as concerns the question of anticipation, it is immaterial whether the complainant in fact knew, or did not know, of the Weston machine, at the time he claims to have invented the machine covered by his patent. Roemer v. Simon, 1 Ban. & A. 138, Fed. Cas. No. 11,-997; Derby v. Thompson, 146 U. S. 476, 13 Sup. Ct. 181; Walk. Pat. § 73.

In Derby v. Thompson, supra, the supreme court of the United States uses the following language:

"While the question is not altogether free from doubt, the majority of the court are not disposed to accord to the changes made by Kenna the merit of invention. Though he may not in fact have known of these three chairs, but may have supposed that he was inventing something valuable, we are bound, in passing upon his device, to assume that he had them all before him, and with that knowledge it seems to us that it required nothing more than the skill of an ordinary mechanic to adopt the most valuable features of each in the construction of a new chair."

91 F.—58

Assuming, in the case at bar, that the complainant, when he built his machine, had before him the Weston machine, the changes which he made in the locations of the cutters and formers, using the language of the court in Coburn Trolley Mfg. Co. v. McCabe Mfg. Co., 80 Fed. 915, "appear to belong to the work of a mechanic, rather than to the genius of an inventor."

Another difference between the machine covered by complainant's patent and the Weston machine, which complainant contends is a patentable improvement, is that in the Weston machine the shoulders on the former did not come in contact with the channel strip, but were made, as testified by one of defendants' witnesses (James Gould), "for the purpose of leaving a flat place on the side of the former to screw the steel former onto the cast-iron hub," while complainant's patent, according to his contention, so extends the shoulders towards the extreme outer edge of the former as to make them efficient instrumentalities in equalizing the sides of the channel strip. If this contention, about which there is conflicting evidence, be allowed, the change which it suggests—the extension or enlargement of the shoulders—was but such an adaptation of an old thing to a new purpose as would occur to a mechanic of ordinary skill, and did not justify the patent. Walk. Pat. § 38; Dunbar v. Elevating Co., 26 C. C. A. 330, 81 Fed. 201; Aron v. Railway Co., 132 U. S. 84, 10 Sup. Ct. 24; Miller Co. v. Meriden Bronze Co., 80 Fed. 523; Lumber Co. v. Perkins, 25 C. C. A. 613, 80 Fed. 528; Smith v. Nichols, 21 Wall. 112.

In Aron v. Railway Co., supra, the supreme court of the United States says:

"It rarely happens that old instrumentalities are so perfectly adapted for a use for which they were not originally intended as not to require any alteration or modification. If these changes involve only the exercise of ordinary mechanical skill, they do not sanction the patent; and, in most of the adjudged cases where it has been held that the application of old devices to a new use was not patentable, there were changes of form, proportion, or organization of this character which were necessary to accommodate them to the new occasion."

In Miller Co. v. Meriden Bronze Co., supra, the court says:

"Complainant contends, as to these prior patents, * * * that in none of them is shown the conception of any combination in which an idler screw tube is so constructed as to provide the advantages of the screw adjustment and direct thrust in one combination. It has not been shown that the prior screw devices * * * were intended to be so operated as to combine the screw adjustment and quick thrust. But I do not understand that the law necessarily imposes upon a defendant, who relies upon the prior art to limit the scope of a patent, the burden of proving that prior patents * * * stated all the undeveloped possibilities of the invention therein disclosed. It is not necessary that the patentee should have conceived the idea of all the uses of which his invention is capable. He is entitled to all the beneficial uses embraced within the scope of his invention. Manufacturing Co. v. Cary, 147 U. S. 635, 13 Sup. Ct. 472; Woods Co. v. Pfeifer, 5 C. C. A. 148, 55 Fed. 390; Manufacturing Co. v. Robertson, 23 C. C. A. 601, 77 Fed. 985."

In Smith v. Nichols, supra, the court says:

"But a mere carrying forward or new or more extended application of the original thought, a change only in form, proportions, or degree, the substitution of equivalents, doing substantially the same thing in the same way by substantially the same means, with better results, is not such invention as will sustain a patent. These rules apply alike whether what preceded was

covered by a patent or rested only in public knowledge and use. In neither case can there be an invasion of such domain and an appropriation of anything found there. In one case, everything belongs to the prior patentee; in the other, to the public at large."

It must be remembered here that shoulders on a former are shown in patent No. 421,961, issued to George Nauman, February 25, 1890 (see Defendants' Exhibit, Nauman Patent, of 1890, Paper No. 8); and that, while complainant's application was pending before the commissioner of patents, one of his claims was rejected, as follows:

"Claim 7 is rejected on the patent to Nauman, 421,961, Feb. 25, 1890, 'Sheet-Metal Ware Making, Troughs & Moldings,' which shows shoulders at the sides of its forming rolls, $C$ $C^1$, and $c$ $c^1$, capable of acting as guards or guides for the metal being grooved." (See Defendants' Exhibit, File Contents Complainant's Tin Machine, Paper No. 10.)

Can it be successfully maintained that a mechanic who, having before him the Weston machine and Nauman patent, merely changes the shoulders of said machine so as to adapt them to the purpose required of shoulders in said patent, performs an inventive act? Such a change, it seems to me, is not invention, but the exercise of mechanical skill.

The rejected claim, No. 7, above mentioned, was as follows:

"The grooved roller and the edge of the insertion roller, provided with side stops arranged respectively at a distance from the extreme outer edge of the insertion roller equal to one-half of the width of the strip to be channeled."

It is true that these "side stops" or shoulders appear in another claim (No. 12), which was allowed; but I have referred to their rejection in claim No. 7, not as an abandonment of the latter claim to the public, but to call attention to the facts that shoulders performing the office of guides were distinctive features of the Nauman patent, and therefore complainant's use of shoulders for that purpose, besides being, as I have already shown, a mere adaptation of the shoulders on the Weston machine, involving only ordinary mechanical skill, was not even original with complainant, but first employed by Nauman.

In Smith v. Elliott, 22 Fed. Cas. 529, it is said: "The law * * * gives no monopoly * * * to mere mechanical skill in the use of known means."

Complainant, however, insists upon utility as the test of invention, citing, among other cases, Hill v. Biddle, 27 Fed. 560; Smith v. Vulcanite Co., 93 U. S. 486; Pearl v. Ocean Mills, 19 Fed. Cas. 56; Loom Co. v. Higgins, 105 U. S. 580; Hall v. Wiles, 2 Blatchf. 194, Fed. Cas. No. 5,954; and Hoe v. Cottrell, 1 Fed. 598. While utility is a circumstance to be considered in determining the question of novelty, it is not necessarily conclusive of the question, for, if so, every improvement in a machine, however slight, and although resulting from mechanical skill only, would be patentable, and this, according to the unquestionable weight of authority, is not the law.

In Rosenwasser v. Berry, 22 Fed. 841, the court says:

"Not every improvement is invention; but, to entitle a thing to protection, it must be the product of some exercise of the inventive faculties, and it must involve something more than what is obvious to persons skilled in the art to which it relates. Pearce v. Mulford, 102 U. S. 112."

In Smith v. Vulcanite Co., supra, Justice Strong says:

"Undoubtedly, the results or consequences of a process or manufacture may, in some cases, be regarded as of importance when the inquiry is made, whether the process or manufacture exhibits invention, thought, and ingenuity."

Justice Strong then quotes from Webster on the Subject-Matter of Patents (page 30), as follows:

"The utility of the change, as ascertained by its consequences, is the real test of the sufficiency of an invention; and, since the one cannot exist without the other, the existence of the one may be presumed on proof of the existence of the other. Where utility is proved to exist in any degree, a sufficiency of evidence to support the patent must be presumed."

Justice Strong manifestly does not approve of Webster's statement of the law, for he immediately proceeds as follows:

"We do not say the single fact that a device has gone into general use, and has displaced other devices which had previously been employed for analogous uses, establishes in all cases that the later device involves a patentable invention. It may, however, always be considered; and, when the other facts in the case leave the question in doubt, it is sufficient to turn the scale."

These enunciations of Justice Strong are not antagonized by anything said in Loom Co. v. Higgins, supra, or Pearl v. Ocean Mills, supra, or in any of the other decisions cited by complainant, although in some of them, owing to their peculiar facts, the circumstance of utility was allowed controlling influence.

In Hollister v. Manufacturing Co., supra, paragraph 3 of the syllabus is as follows:

"Although the idea embodied in an invention described and claimed in a patent is new and of an increased utility, beyond what has been attained, yet it may not be, in the sense of the patent laws, an invention."

Conceding that a machine for forming box binding channel strips can be more conveniently operated and produce larger results with the cutters and formers outside than inside the bearings, and that shoulders in complainant's patent are adapted to a beneficial purpose, which they did not accomplish in the Weston machine,—or, in other words, conceding utility in the changes made by complainant in cutters and formers and shoulders, and giving to these circumstances of utility due weight,—I am still of opinion, from all the evidence in the case and a careful comparison of the two forms of the machine, that said changes were not inventive acts, but are attributable only to mechanical skill.

In the consideration of this case, I have not been unmindful of the rule urged in complainant's brief that a patent is prima facie evidence of novelty and invention. This, however, is a mere rule of evidence, which, although it casts the burden of proof upon the alleged infringer, does not take from the courts authority to declare what constitutes novelty and invention. Warren Co. v. Rosenblatt, 25 C. C. A. 625, 80 Fed. 540. I am satisfied that the claims of complainant's patent, so far as embodied in the machines built by defendants, were anticipated by the Weston machine, and upon that ground the bill will be dismissed.