## DERBY v. THOMPSON.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MASSACHUSETTS.

No. 40. Argued November 11, 14, 1892. — Decided December 12, 1892.

The article claimed to be protected under the second claim in letters patent No. 224,923 issued February 24, 1880, to Joseph W. Kenna for a new and useful improvement in a combined child's chair and carriage, did not, with reference to the state of the art at the time, involve invention in the opinion of the majority of the court; but all the judges concur in the opinion that the claim should receive a narrow construction, and, that, in this aspect of the case, the defendants' chairs did not infringe.

THIS was a bill in equity for the infringement of letters patent number 224,923, issued February 24, 1880, to Joseph W. Kenna, for a new and useful improvement in a combined child's chair and carriage.

The invention related to an article of furniture which, by a simple adjustment of the parts, may be converted from a child's high chair for use at a table to a child's carriage, and *vice versa*, as may be desired; and more particularly to the manner of connecting the chair to its supporting frame, and supporting it thereon. It consisted practically of an ordinary chair, B, with four legs, mounted when used as a high chair upon a

standard, A, also having four legs to correspond with those of the chair. The front legs of the chair were pivoted at their

*Fig. 1.*

*Fig. 2.*

*Fig. 3*

lower ends, D, upon the corresponding legs of the standard. Upon the rear legs of the standard there were pivoted at their

lower ends the arms of a bail, E, which turned up under the
rear part of the chair, and supported it by the aid of a catch,
F, fastened to a cross-piece or rod between the two rear legs
of the chair. When used as a carriage, the bail was unfas-
tened from its catch, which allowed the rear of the chair to
fall between the rear legs *a* of the standard. The front legs
*a'* of the standard assumed a horizontal position. The chair
then rested upon four wheels, L, attached to cross-pieces con-
necting the front and rear legs, and the bail served as a push-
handle for the carriage thus formed. By this adjustment,
which is shown in the annexed drawings, [on page 477,] the
chair is converted into a wheel carriage, on which the child
may be pushed by the aid of the bail from place to place.

The patentee says in his specification : "In making these
changes it is not necessary to remove the child from the chair,
for instead of tilting the chair back, as shown in Fig. 2 of the
drawings, it may be held in an upright position, and the frame
A tilted forward on its front standard, until it assumes the
position shown in Fig. 3 of the drawings, and in changing from
the latter position to a chair, the supporting frame may be
tilted upward and backward into the position shown in Fig. 2
of the drawings, while at the same time the chair is held in an
upright position by the attendant."

The claim relied upon in this suit was the second, which was
as follows : " 2. The frame A, in combination with the bail E,
chair-frame B, pivoted at its lower front corners to the frame
A, and the yielding rest or support F, substantially as de-
scribed." The case was defended upon the ground of want of
novelty, and also of non-infringement. The court ordered a
final decree for the plaintiff, 26 Fed. Rep. 299, and 32 Fed. Rep.
830, and the defendant was allowed an appeal to this court.

*Mr. Arthur v. Briesen* for appellants.

*Mr. J. E. Maynadier* for appellees.

MR. JUSTICE BROWN, after stating the case, delivered the
opinion of the court.

The first assignment of error turns upon the validity of the second claim of the patent in question, which was for "the frame A, in combination with the bail E, chair-frame B, pivoted at its lower front corners to the frame A, and the yielding rest or support F, substantially as described." This claim is practically for the combination of four elements:

1. A low chair having the usual frame of four legs;

2. A supplemental frame placed under the chair to raise it, and arranged to fold out of the way when the low chair is used;

3. A bail forming a part of the rear legs of the supplemental frame; and

4. A catch or fastening device which keeps this bail in place when the chair is used as a high chair.

If Mr. Kenna had been the first to invent a high chair, which, by a simple mechanical arrangement, could be converted into a rolling chair or carriage, by the aid of a bail, which served alternately for the support of the high chair and as a push-handle for the rolling chair, his patent would doubtless be entitled to a liberal construction. Such a device is at once ingenious, useful, compact and convenient. He was not, however, the first in this field of invention. The patent to Caulier of April 23, 1878, exhibits a chair, the seat of which was hinged to the upper end of four legs, corresponding to the frame A of the plaintiff's patent, and provided with rollers secured to the lower part of the legs or stretchers between them, in combination with rollers secured beneath the foot-rest of the chair. The rear legs were secured to the seat by spring-bolts immediately beneath the seat, which bolts, when withdrawn, permitted the front legs to turn, and assume a partially horizontal position, the chair falling and resting in front on casters or wheels attached to the underside of the step, and in the rear, upon two corresponding wheels journalled in the bottom of the four legs. There was also a swinging push-handle pivoted to the rear legs, but performing no function except when the device was used as a rolling chair. This chair contained a frame corresponding to the frame A of the plaintiff's patent, in combination with a push-handle or bail, and a chair-seat

pivoted in front to the supplemental frame; but it did not contain a supporting chair frame of four legs, nor the yielding rest or support F. While evidently a somewhat crude device, it did contain two, if not three, of the four elements of the plaintiff's patent though combined in a different manner.

The exhibit Pearl chair, which, we agree with the court below, antedates the Kenna invention, also consisted of a chair-seat hinged to the front legs of a frame, corresponding to the Kenna frame A, immediately beneath the seat, while to the rear legs of this frame was pivoted a bail, which served to support the rear of the chair-seat when used as a high chair, and as a push-handle when used as a rolling chair. The wheels were pivoted, as in the Caulier chair, to the underside of the step and to the lower ends of the front legs of the frame A. There was also a catch attached to the rear of the chair seat into which the bail fitted when turned up for use in supporting the high chair. There are found in this chair all the elements of the Kenna chair, except that the chair is pivoted or hinged to the frame immediately beneath the seat, and hence both this and the Caulier chair are less compact, convenient and sightly than the Kenna device. When used as a rolling chair, the chair seat was thrust forward in front of the legs, which projected in the rear and made the carriage much less convenient to handle.

In the Patten patent of September 3, 1878, however, the hinges, by means of which the legs of the supplemental frame were turned under, were placed some distance below the seat, which had the effect, when used as a rolling chair, of throwing the chair seat farther backward and nearer to the bail. This peculiarity is also found in the Chichester patent of July 8, 1879, which, while differing widely from the Kenna patent in other respects, resembles it in the particular of having a complete chair instead of a mere chair seat.

Plaintiff is evidently not entitled to claim the combination of the chair frame pivoted to the supplemental frame A, and the bail, without the yielding support or rest, since the latter is not only incorporated in his claim, but a claim which he originally made for "the supporting frame A, in combination

with the chair frame hinged thereto at its lower front corners, and the movable support E, substantially as described," was rejected by the Patent Office upon reference to the Caulier patent, and Kenna acquiesced in such rejection. It is, then, only in connection with the yielding rest or support F that he could possibly claim the combination of the other three elements. But this rest or support is also found in connection with a chair seat, a standard of four legs, and a bail in the Pearl chair, performing the same function of holding the bail in position, to support the rear of the chair seat when not in use as a rolling chair, but attached directly to the chair seat, instead of to a rod connecting the two rear legs of the chair. Although the Pearl chair is referred to in one of the letters of the department, (December 12, 1879,) it was only as exhibited in the catalogue of Heywood Brothers, the manufacturers, wherein the catch for the support of the bail was not represented; but, appearing as it does in the Pearl chair put in evidence, it is difficult to see why this chair does not contain practically all the elements of the Kenna claim. It is true there is a difference in the manner in which the combination is put together; but the part wherein they differ most widely, namely, the pivoting of the chair frame at its lower front corners to the front legs of the supplemental frame, is found both in the Patten and prior Chichester patents. What, then, has Mr. Kenna done? He has taken the Patten or Chichester chairs bodily, pivoted as they are at the lower front corners to the supplemental frame, and has applied to them the bail and catch of the Pearl chair, and has thereby made a chair more compact than the Pearl, but not more so than the Patten and Chichester chairs, but perhaps more convenient in other respects. While the question is not altogether free from doubt, the majority of the court are not disposed to accord to the changes made by Kenna the merit of invention. Though he may not in fact have known of these three chairs, but may have supposed that he was inventing something valuable, we are bound, in passing upon his device, to assume that he had them all before him, and with that knowledge it seems to us that it required nothing more than the skill of an ordinary

mechanic to adopt the most valuable features of each in the construction of a new chair. Indeed, the result is rather an aggregation of old elements than the production of a new device. As a high chair the Kenna is not superior to the Pearl chair, and as a rolling chair it is no more compact and apparently no more convenient than the Patten and Chichester chairs. It is pertinent to remark in this connection, as bearing upon the merits of this patent, that the invention described in it never seems to have gone into use, perhaps owing to the fact that the chair was encumbered by a slotted bar G, which was necessary, when used as a high chair, to prevent it from tilting forward on its pivots, and throwing the child out. Plaintiff's chair as constructed and put upon the market not only dispenses with the catch F, but locates the wheels upon the front legs of the supplemental frame, much as in the Caulier and Pearl chairs. As Kenna was confessedly not the inventor of the three principal elements of his chair, viz., the chair frame, the frame A, and the bail, either separately or in combination, and as the fourth element, which is claimed to give life to his patent, viz., the catch F, has either been abandoned altogether, or practically abandoned by substituting for it a bail having an elasticity sufficient to hold it in place without a catch, we think the introduction of this catch into the prior combination is insufficient to support the patent.

But, even conceding that the Kenna device does involve a patentable novelty, we are all of the opinion that his claim should receive a narrow construction, and that, in this aspect of the case, neither of the defendant's chairs can be said to infringe. In these devices the frame A is not *pivoted* to the chair frame, but is *hinged* to it in such a manner that the chair cannot tip forward, and hence the slotted bars (which, though not claimed, are an essential feature of the Kenna device) are unnecessary. Neither of the exhibits put in evidence as the defendant's chair has the yielding rest or support F. It is true that, by a slight elasticity in the bail, it is made to catch under the frame of the chair seat in such manner as to obviate the necessity of a rest or support. But the fact that the defendants have been able, by a skilful contrivance, to dispense with

one of the elements of the Kenna claim does not make the devise an infringement. In this case the Pearl chair possessed the same feature of elasticity in the bail, which is claimed to be the mechanical equivalent of the yielding rest or support. In the other exhibit a button is used to hold the bail under the frame of the seat; but as this button is not a "*yielding* rest or support," or a "spring catch," the charge of infringement as to this exhibit is not sustained.

The decree of the court below is, therefore,

*Reversed, and the case remanded, with directions to dismiss the bill.*