### VULCAN IRON WORKS v. SMITH et al.[1]

(Circuit Court of Appeals, Ninth Circuit. May 28, 1894.)

#### No. 111.

1. PATENTS—ANTICIPATION—BAND-SAW MILLS.
   In the Smith patent, No. 442,645, for an improvement in band-saw mills, claim 1 of which is for the combination with the band wheels and main supporting frame or column of an integral standard carrying the front bearings of the upper and lower band-wheel shafts, the standard being attached to the front side of the main frame or column between the band

[1] Rehearing pending.

wheels, the essential feature covered by this claim is the outside support for the front bearings of the band-wheel shafts, which, as constructed, permits the removal and replacement of the band saw without difficulty or derangement of the machinery; and the claim was not anticipated by previous patents, none of which covered the combination in the same form, although its elements were found in them.

**2. SAME—LIMITATION OF CLAIM—PRIOR STATE OF ART—INFRINGEMENT.**

As there was no invention in combining such elements found in previous patents, nor in overcoming their defects by merely increasing the strength of the parts, the claim cannot be construed broadly to cover the use of an integral outer standard attached to the main column between the band wheels, but must be limited to the construction shown of such outer support in the form of a single casting, as expressed in the application, stating the object to be to lessen the number of parts usually considered necessary; and hence that claim is not infringed by a combination in which the outside support is made of two parts, although they are bolted together so as to present the effect and produce the result of a single casting; and claims 2, 3, and 4, each of which merely adds to the combination of claim 1 an element found in previous patents, not involving invention, are not infringed by like combinations having the outside support so constructed. 57 Fed. 934, reversed.

**3. SAME.**

Claims 5, 6, and 10 of the patent, covering the straining device whereby the saw is kept at the proper tension, all the elements of which, except the mechanism supporting the knife-edged bearings of the rock shaft, are found in previous patents, is limited by such pre-existing devices, and hence is not infringed by the straining device of the Koefod patent, No. 468,303, the differences in the supporting mechanism being greater than the changes made by the Smith patent in adapting the previous devices. 57 Fed. 934, reversed.

Appeal from the Circuit Court of the United States for the Northern District of California.

This was a suit by Smith, Myers, and Schnier against the Vulcan Iron Works of San Francisco for infringement of a patent. The circuit court rendered an interlocutory decree for complainants. 57 Fed. 934. Defendant appealed.

Wm. F. Booth and John A. Wright, for appellant.

J. H. Miller and M. M. Estee, for appellees.

Before GILBERT, Circuit Judge, and KNOWLES and HAWLEY, District Judges.

GILBERT, Circuit Judge. This appeal is taken from an interlocutory decree of the circuit court adjudging the patent sued upon to be valid, and the appellant, the defendant therein, to have infringed the same, and enjoining the defendant from further infringing. 57 Fed. 934. The complainant's patent is No. 442,645, and was granted to S. R. Smith on December 16, 1890, for an improvement in band-saw mills. The defenses relied upon on the appeal are: (1) The absence of patentable novelty in the combination of the claims of complainant's patent; (2) the want of patentable invention in the same; (3) that there is no infringement by the defendant. The complainant's band-saw mill consists of an endless band saw, stretched over and revolving about two large wheels, which are separated from each other by a space sufficient to admit of the operation of sawing lumber. The wheels are called the

upper band wheel and the lower band wheel. The frame of the mill, as shown in the patent, Fig. 1, consists of a base plate, A, an upright column, C, a horizontal portion, D, extending from the column, between the two band saws, and sustaining an upright arm, $D^1$, upon the outer side of the vertical plane of the band wheels, and a similar arm, $D^2$, extending downward, the object of both of which arms is to furnish outer bearings respectively for the upper and lower band wheels; the inner bearings being attached to the upright column, C, and both the upper bearings being placed in tubes set in the column, C, and in the outer arm, $D^1$. The first claim of the patent is as follows:

"In a band-saw mill, the combination, with the band wheels and main supporting frame or column, of an integral standard carrying the front bearings of the upper and lower band-wheel shafts, said standard being attached to the front side of said main frame or column between said band wheels, substantially as hereinbefore set forth."

It is urged that this claim is anticipated by the English patent to William Newbury, No. 3,105, issued in 1808; by the United States patent to W. F. Parish, No. 388,069, of August 21, 1888; by the

FIG. 1

FIG. 2.

FIG. 3.

FIG.4.

patent to C. Meiner No. 246,330, of August 30, 1881; and by the patent to De Witt C. Prescott, No. 369,881, of September 13, 1887. The essential feature of the complainant's invention, as covered by the first claim, is obviously the outside support. The outside support, as constructed in his patent, in combination with the other elements, permits the removal and replacement of the band saw from and upon its carrying wheels without difficulty, and without derangement of the machinery. We fail to find the combination in this form in any of the other patents. In none of them is there a combination of a main column with an integral standard attached to the same at a point between the band wheels and at no other point. In the Newbury patent the band saws are supported between two equal columns, connected, it is true, at a point between the wheels, but neither of which is an outside standard, or so constructed as to permit the placing or removal of the band saw without disturbing the position of the machine. The same is true of the Parish patent. In the Meiner patent is found, per-

haps, the nearest approach to the complainant's invention, as covered by this claim, and, if the outer standard in that patent were so constructed as to be operated without its attachment at the upper and lower ends by screws connecting the same with the frame which incloses the whole machine, it would be clearly an anticipation of the complainant's claim for an integral outer standard, but in the use of those connecting screws a dissimilarity appears which, though slight, is, in our judgment, sufficient to defeat the defense of anticipation, and, although it is apparent that the Meiner mill might be so constructed that the connection of the ends of the outer standard with the main frame might be wholly unnecessary and superfluous, yet there is no intimation in the patent that the machine was by the inventor intended to be used or constructed in any manner other than that indicated in his specifications. The Prescott patent also lacks one of the essential elements of the complainant's first claim. Instead of an integral outer standard attached to the main column between the band wheels, it has two distinct outer standards or arms for carrying the outer bearings of the band wheels, the lower of which is attached to the column, but the upper is fixed to a column which is telescoped over the main column, and is moved vertically thereupon by means of a jack screw.

It is next contended that the first claim lacks patentable invention,—that the combination of elements produces no new and useful result. When the prior patents are considered, it is evident that the deviations made by the complainant from the devices that preceded him are but slight. In the Prescott patent he found the main column, in connection with band wheels and standards for carrying the outer bearings of the band wheels attached to the main column at points between the wheels, so constructed as to permit the convenient removal and replacement of the band saw, the lower standard integral and immovable, the upper movable vertically, its position and tension being controlled by a jack screw resting upon the upper portion of the lower standard, and connecting the two. In the Meiner patent he found a main supporting frame or column in connection with band-saw wheels, and an integral outer standard carrying the front bearings of the band-wheel shafts, and attached firmly by a connecting piece to the main frame at a point between the band wheels. The fact that the ends of the outer standard were capable of further connection with the main frame by movable bolts or screws renders it none the less an integral outer support. If, therefore, the complainant's first claim is to be regarded as covering broadly the combination with band wheels and a main supporting frame or column of an integral outer standard attached to the main column between the band wheels, it will be seen that he found those elements in the prior patents, and that he has taken the single main column of the Prescott patent and the integral outer standard of the Meiner patent, and has combined them in a machine which may be conceded to be neat, compact, and strong. But this was not invention. Burt v. Evory,

133 U. S. 349, 10 Sup. Ct. 394; Trimmer Co. v. Stevens, 137 U. S. 423, 11 Sup. Ct. 150; Setter Co. v. Keith, 139 U. S. 530, 11 Sup. Ct. 621; Ryan v. Hard, 145 U. S. 241, 12 Sup. Ct. 919; Derby v. Thompson, 146 U. S. 476, 13 Sup. Ct. 181.

It is urged that there was a defect in both those prior patents which the complainant has overcome, and that therein he has displayed invention. The defect is said to be the insufficiency of the outer supports of the band wheels to sustain the strain of the band saw, and the tendency to draw the wheels out of allignment. To correct this evil it was necessary that the outer standard should be made more firm and rigid. This the complainant has accomplished by increasing the strength of that part. If this is all that he has done, it is manifest that he has displayed no invention. If the prior machines were defective for want of strength or firmness, the remedy was too obvious to permit of discussion. It may be seen from a simple inspection of both the Prescott and the Meiner patents that machines made under either might have been so constructed as to absolutely overcome the defect referred to. In each the outer supports might have been made so firm and strong as to hold the band wheels in true alignment, no matter what the strain of the band saw. It is argued, further, that there must be invention in the complainant's machine from the fact that it produces more lumber per diem than any that preceded it. But the increased speed of the complainant's mill is due, not to the introduction of a new element into his combination, or to a new combination of known elements; it is attributable solely to the superior strength and firmness of the supporting column of the band wheels. It requires no reasoning to prove that, if the Prescott mill and the Meiner mill are constructed with equal strength and rigidity, they will run with the same speed and accomplish the same result with the complainant's mill. But, if there is in the complainant's combination invention sufficient to sustain the first claim of his patent, it is limited to the construction of the integral outer support in the form of a single casting, attached directly to the main frame or column, and his sole invention is expressed in his application where its object is said to be "also to lessen the number of parts usually considered necessary in this class of devices." By referring to the proceedings in the patent office had upon the filing of his application, it will be seen that the allowance of the first claim, after the same had been twice rejected, was based upon this view of his invention,—that his outer support or standard was a single casting attached to the main column with no intervening part, and that thereby the number of parts was lessened. In considering the question of infringement, the court must be guided by the construction so given to the plaintiff's invention. The evidence proves that the defendant has made band-saw mills in imitation of the complainant's machine, and which closely resemble it. But the defendant's outer support for the band wheels is not made in a single casting. It consists of two castings, firmly bolted together and to the main column at a point

between the band wheels. If the complainant were entitled to have his first claim so construed as to cover, in the broad sense of the word, the use of an integral outer standard, clearly the defendant's device would be an infringement, for that element of the combination as used by the defendant is none the less integral by reason of the fact that it is made of two parts so securely bolted together as to present the effect and produce the result of a single casting. But the complainant's invention being limited, as we have seen, by the prior state of the art, if not by the express words of his application, to the use of a single casting, the conclusion necessarily follows that the defendant has not infringed this claim of the patent. Roemer v. Headley, 132 U. S. 313, 10 Sup. Ct. 98; Snow v. Railway Co., 121 U. S. 617, 7 Sup. Ct. 1343; Hoff v. Manufacturing Co., 139 U. S. 326, 11 Sup. Ct. 580; Derby v. Thompson, 146 U. S. 476, 13 Sup. Ct. 181.

The second claim adds to the combination enumerated in the first the hollow supporting column in the outer standard, and the hollow castings attached to the main column opposite the same, to furnish supports for the bearings of the upper and lower band-wheel shafts. This claim combines with the first claim the element of hollow main standards and hollow outer standards, whereas, by the first claim, the standards may be either hollow or solid. The hollow standards are found both in the Parish patent and the Prescott patent, and in both are used for the same purpose as in the complainant's patent. There is, therefore, no invention in the combination of that element with those that compose the first claim. The complainant can only claim the hollow standards in combination with the use of an outer standard made of a single casting, and attached directly to the main column, and it follows that, if the defendant has not infringed the first claim, it has likewise not infringed the second. The same is true as to the third claim, which covers the use of an outer standard having a flanged, horizontal portion, to be secured to the main supporting frame, and vertical arms cast in one piece, with the central portion bored to receive the adjustable bearings of the upper band-wheel shaft. Claim 4 is as follows:

"(4) The combination of the base plate, A, cast in a single piece, the column, C, having a flanged base to be secured to the said base, A, the front support for the band-wheel shafts consisting of the castings, D, D¹, D², and shield, D², together forming a supporting frame for band-saw mills, substantially as hereinbefore set forth."

The effect of this claim is to add to the elements already had under consideration the use of a base plate, which is a broad, heavy casting, a flange upon the base of the main column for the purpose of attaching the same to the base plate, and a shield above the lower band wheel. All of these elements are found in the prior patents. In the Prescott patent, the base plate, A, is used; in the same patent, as well as in the patent to Brophy, No. 261,579, of date July 25, 1882, and in the patent to Stephens, No. 322,465, of December 15, 1885, are found the flanged base of the main column. In the Hinkley patent, No. 348,280, of August

21, 1886, the lower band wheel is protected by a shield. The prior state of the art, therefore, leaves the complainant's invention, as formulated in the fourth claim, to the use with the other elements of a shield to the lower band wheel, made in a single casting, with an outer standard, as the same is described in the first claim. This claim the defendant, for the reasons above set forth, has not infringed.

The remainder of the assignments of error concern what is known in the complainant's patent as the straining device, referred to and described in claims 5, 6, and 10. The object of the straining device in a band-saw mill is to maintain a constant strain upon the band saw, thereby holding the same to its place upon the band wheels, and securing, by its proper tension, accuracy of work. In the complainant's patent, the shafts of the upper band wheels have their bearings on top of vertical columns or trunnions, movable vertically within the bore of the standards. These trunnions terminate below in screw shafts, which rest in the ends of short arms extending from a single rock shaft. By the turning of the rock shaft the trunnions are raised and lowered, carrying with them the upper band wheel. In order to hold the rock shaft under a constant tendency to turn, and to hold the trunnions up, and press the upper band wheel against the saw, a lever is secured to the rock shaft, and weights are imposed upon the lever. The rock shaft itself turns upon "knife edges," which are let into the shaft upon the lower side at either end, and these rest upon brackets projecting inwardly from the outer walls, respectively, of the outer standard and the main column. The claims are as follows:

"(5) In a band-saw mill, the combination of the supporting frame, the vertically adjusted bearings for the upper band-wheel shaft, mounted in said frame, the transverse shaft, G, mounted on knife-edge bearings, in said frame, and having arms, g, g¹, secured upon said shaft to support the bearings of said upper band-wheel shaft, and the weighted lever, K, secured upon said shaft between the knife-edge bearings to counterpoise the bearings of the upper band-wheel shaft, and provide a sensitive automatic adjustment for the same, whereby the saw is kept at the proper tension, substantially as hereinbefore set forth."

Claim 6 adds to the combination in claim 5, in substance, the following: (1) The knife-edge bearings let into the rock shaft; (2) the supporting plates, g⁴, resting on the brackets in the main frame; (3) that the short arms of the rock shaft have steps in their outer ends; (4) the hardened steel adjustment screws passing through said steps; (5) that the adjustable bearings of the upper band wheel rest upon these screws; (6) the rod, k, suspending the weights; (7) the cap nut, k, supporting the weights; (8) the movable weights. Claim 10 is as follows:

"(10) In a band-saw mill the combination of the column, C, brackets projecting from said column, a rock shaft having knife-edge bearings resting upon said brackets, a weighted lever, and two arms, g, g¹, screwed upon said rock shaft with the band-wheel shaft, and the boxes and rods supporting the boxes, said rods resting upon the arms, g, g¹, substantially as shown and described."

Straining devices are found in most of the band-saw mills which preceded the complainant's invention. In the Parish patent the

vertically adjustable bearings of the upper band-wheel shaft are mounted as in the complainant's combination, and are supported upon rods, the lower ends of which connect with pivoted levers, the inner ends of which connect again with hanging rods, the lower ends of which connect with the arms of a rock shaft, with a central lever carrying a weight. Here are all the elements of the complainant's straining device, with the exception of the knife-edge bearings of the rock shaft and the mechanism necessary for the support of the same. In the Parish patent the rock shaft turns upon round journals. The use of the knife-edge bearing, however, is found in the straining device of the Prescott patent. There one of the rods which support the bearings of the band wheel is knife-edged below, and rests upon a pivoted lever, which supports the weights, and the advantage of the sensitiveness of the knife-edge bearing is distinctly claimed by Prescott in his application for patent. With these patents before him, the complainant combined the elements of his straining device. He mounted the rock shaft upon knife-edge bearings let into the shaft at either end, placed the upright rods which support the bearings upon steps let into the outer ends of short arms or levers attached to the rock shaft, and supported his knife-edge bearings upon brackets. Notwithstanding the prior state of the art, this combination, we think, displays invention. But the question arises whether the defendant has infringed this feature of the complainant's patent. The defendant has used the straining device patented to G. T. Koefoed on February 2, 1892, letters patent No. 468,303. In the Koefoed patent the supporting columns of the band-wheel bearings rest upon a transverse bar, which the complainant denominates a rock shaft, but which the defendant calls a straining lever. The lower ends of the supporting columns are knife edged, and rest directly upon the straining lever, and not upon arms projecting therefrom, as in the complainant's device. The straining lever itself, instead of turning upon knife-edge bearings let into the same, is constructed with short arms projecting laterally, and these arms rest upon knife-edge bearings placed, not in the arms, but let into supporting brackets below the same, which brackets project from the inner walls of the main frame and the outer standard. We are of the opinion that the Koefoed patent so far departs from the specific features which constitute the complainant's invention that it does not infringe the same. If the complainant's device were a pioneer invention, or if it introduced for the first time the use of a rock shaft on knife-edge bearings, or any other essential element of the combination, it would be entitled to a broader construction; but, narrowed as it is by the known and patented devices antecedent to it, the court is compelled to more strictly construe its claims. The Koefoed device goes further than to make merely formal changes in the complainant's patent. Its deviations therefrom do not consist in the mere transposition of parts, the placing of knife-edge bearings upon one part instead of another, the making a rock shaft in the form of a bar instead of a cylinder, but it introduces such change in the construction of the

parts as to avoid the elements of the complainant's invention, limited, as we have found the same to be, by the pre-existing devices. The defendant has not used a "shaft with arms, g, g¹," nor a shaft with knife-edge bearings, either let into the same or into the supporting mechanism of the same. He has used a shaft without the arms, g, g¹, for the support of the upper band-wheel bearings, and has not made the shaft to turn upon knife-edge bearings in the shaft, or beneath the same, but has connected it with knife-edge bearings by arms extending laterally therefrom. These differences, slight as they may be, are, in our judgment, as great as the changes which the complainant made in adapting the former devices, and are sufficient to relieve the defendant of the charge of infringement. The decree is therefore reversed, at the cost of the appellee.