# MILLETT v. ALLEN.

### PATENTS; INVENTION; NOVELTY; NOTICE.

1. The application of an old device or process to a similar or analogous subject, with no change in the manner of applying it, and no result substantially distinct in its nature, is not patentable, even if the new form of result has not before been contemplated. (Following *Durham* v. *Seymour*, 6 App. D. C. 78.)

2. Inventors must be charged with knowledge of devices disclosed in former patents, whether or not they have actual knowledge of such patents.

3. Where the use of tapered threads for steam-tight connections is well known in the art, the substitution, in the Bourdon tube spring of a steam gage, of tapered threads for a soldered joint, amounts to nothing more than the exercise of mechanical skill, and does not constitute that creative work of the inventive talent which it is the purpose of patent laws to encourage and reward. (Following *Durham* v. *Seymour, supra.*)

4. The fact that a new device or construction may have displaced others, by reason of its manifest superiority, is material only when the question of patentable novelty is otherwise a matter of doubt. (Following *Re Garrett, ante,* 19.)

No. 1563. Submitted January 18, 1906. Decided February 6, 1906.

HEARING on an appeal by the complainant from a decree of the Supreme Court of the District of Columbia dismissing a bill to establish their right to a patent.　　　　*Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. W. H. Singleton* and *Mr. Ralph W. Foster* for the appellant.

*Mr. John M. Coit* for the appellee, the Commissioner of Patents.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

On June 12, 1899, Joshua H. Millett and Samuel G. Reed, claiming to be joint inventors of an improvement in Bourdon tube springs for steam or pressure gages, filed an application in the Patent Office for a patent therefor with the following claims:

"1. In a steam gage, the Bourdon tube and the part to which it is secured, the joint between the two being unsoldered and held solely by frictional contact, as explained.

"2. In a steam gage, the Bourdon tube and the part to which it is secured, the joint between the two being unsoldered and held by frictional contact, as explained.

"3. In a steam gage, the Bourdon tube and the part to which it is secured, the joint between the two being unsoldered, and held by a frictional binding screw-joint connection as explained.

"4. In a steam gage, the Bourdon tube and the part to which it is secured, the joint between the two being unsoldered and tapering, as explained.

"5. In a steam gage, the Bourdon tube D, having the threaded tapered end, *d,* in combination with the head, C, having the correspondingly threaded tapered opening $C^2$, as explained.

"6. A Bourdon tube, having a reduced elastic portion and enlarged or reinforced threaded ends, in combination with a gage case having threaded portions which engage the threaded ends of the tube.

"7. The Bourdon tube D, having the reduced elastic body portion, *d,* and the enlarged or reinforced end portions, in combination with the gage case, having correspondingly threaded portions."

This application was rejected by the then Commissioner of Patents, whose decision was affirmed on appeal to this court. 18 App. D. C. 186.

This bill was thereafter, February 8, 1902, filed in the su-

preme court of the District by said Millett and Reed, joined by their assignee, the Crosby Steam Gage & Valve Company, against Frederick I. Allen, the present Commissioner of Patents, to establish their right to a patent having said claims, in accordance with the provisions of section 4915, Rev. Stat. (U. S. Comp. Stat. 1901, p. 3392).

The answer denied the allegation that Millett and Reed were the original, first inventors of the invention claimed, and alleged that all the material parts of the same had been described in a number of patents, domestic and foreign, a list of which was given showing subject-matter, dates, and numbers.

The only patent referred to in the decision of the Commissioner rejecting the application was one to Lane, No. 643,876, for a pressure gage. While steam is mentioned in the specifications of this patent, it was intended for, and has been exclusively used as, a hydraulic gage. To answer the demand for the excessive pressure required in such structures, it is capable of measuring a pressure of 12,000 pounds to the square inch. To be capable of such measurement its tube springs are made of steel instead of brass that is ordinarily used in steam gages which are rarely required to measure a pressure of more than 250 pounds to the square inch. Lane's specifications do not show whether the screw-threaded joint connecting the pipe and spring is soldered or not. There being no proof in respect of this, it was assumed that no solder was used to make the joint tight.

In affirming the decision of the Commissioner of Patents, Mr. Justice Morris, who delivered the opinion of the court, said: "If there was in fact a soldering in the device mentioned or shown in the Lane patent, and such soldering rendered that device essentially different from the invention of the appellants, it ought not to have been difficult to adduce some evidence of the fact. Whether, if shown, the fact of soldering would have differentiated the two devices, it is unnecessary for us to determine. The Commissioner of Patents was of the opinion that it would not have that effect."

The bill contains the following specific description of the invention as now claimed by the appellants:

"7. That the improvement in Bourdon tube springs invented by said Millett and Reed as aforesaid consists in providing a new and useful means of connecting by threaded engagement the ends of a Bourdon tube spring within a gage; one end to the 'tubular head' (that part of the gage which is attached to the steam boiler), the other end to the registering mechanism of the gage. The invention consists in, or is the result of, taking a piece of ordinary brass tube of commerce and turning it, with the exception of its ends, in a lathe to a thickness adapted to the uses intended in a pressure gage. The ends of the tube are left of their original thickness and are cut by a taper thread for attachment to the tubular head and registering mechanism as aforesaid. The tube is then flattened throughout the turned portion, and curved to the form required. By means of these taper threads a joint is secured which is both firm and tight, though no solder is used, even when subjected to a very high degree of heat and steam pressure."

The evidence taken in support of their contention clearly shows that the screw joints of Lane's device are not tapered, but straight, and that they are required to be soldered to insure tightness. It appears that the Bourdon tube springs are flattened from end to end, and have soldered tops or caps and connections. For a long time after their use the steam pressure was ordinarily very low, say from 25 to not more than 125 pounds per square inch. There has been a gradual increase of pressure, which is now often as great as 300 pounds. The heat to which the gage is subjected increases with the pressure, and, at 150 pounds, amounts to about 370 degrees, Fahrenheit, which will melt the solder. For this and higher pressures it becomes necessary to secure the caps and joints without solder. The Crosby Steam Gage & Valve Co. is the assignee of the Lane patent, as well, also, as of the invention of the appellants; and the latter have been and are in its service.

They undertook to meet the conditions aforesaid by improving the solder, but without success. They next thought of electric welding, but abandoned the idea without having made sufficient tests. The last conception was that above described.

In the Lane construction the ends of the tube remained cylindrical, while it is flattened between them, and are cut by a straight screw thread for attachment.

There was evidence tending to show that, since the adoption and manufacture of the new construction of the appellants, there have been greatly increased sales of their steam gages, particularly to railway companies for their high-pressure boilers. Upon a consideration of all these facts, the court below held the device unpatentable, and dismissed the bill. From that decree this appeal has been prosecuted.

The appellants have abandoned claims 6 and 7 before set forth, and rest their contention upon the remaining five.

The first four of these are substantially similar, covering broadly the Bourdon tube spring held in place by frictional contact without solder. Claim 3 describes the joint as a frictional binding screw-joint connection, and claim 4 describes this joint as tapering.

In considering the subject-matter of these claims, it is unnecessary to determine whether the use of solder in the Lane screw joint makes his device patentably distinguishable.

Passing by the Lane device, we are of the opinion that the court was right in denying the patentability of these four claims, in view of the prior art as disclosed by the British patent issued to Cowper in the year 1849 for a pressure gage using Bourdon tubes of brass, copper, iron, steel, etc. In his specifications Cowper says: "The tubes may be fixed in various ways, as, for instance, by soldering, or by a union joint as in figure 26, or by driving a ferrule outside or inside the tube as shown in figures 27 and 28." The union joint was then a well-known device, and had been in very general use in steam fittings. Complainant Reed, who testified in the case, and is a skilled mechanic, was shown Cowper's figure 26, and admitted that it showed a Bourdon tube attached to its socket by means of a flange on the tube end, which is held in place by a jam nut, making a union joint. He also admitted it to be well known in the art that a union joint needs no solder to make it steam tight, under the modern high pressure. He further admitted that in his opinion, from an

examination of the Cowper patent, solder was not intended to be used in either of the constructions shown in figures 26, 27, and 28.

In view of these admissions, it is clear that these four broad claims cannot be sustained.

This brings us to the consideration of claim 5, which is limited in terms to the tapered screw threads in the end of a Bourdon tube in combination with the head having a correspondingly threaded, tapered opening as described. The result attained by this specific form of joint is the same accomplished by the union joint shown in Cowper's figure 26, namely, a steam-tight, frictional connection without the use of solder.

The Crosby company was contented with its soldered joint until the increased demand for high pressure, which had the effect to melt the solder, suggested the necessity of some effective substitute. Electrical welding was suggested, but not tried. Clamps and bands were tried without success. Reed then suggested to Millett the tapered thread of the claim. The latter, at first, thought that the straight connection with packing and a jam nut would serve the purpose better. Finally the tapered thread was tried and found to work successfully. There was nothing new in using tapered threads for steam-tight connections. Reed admitted this, and said that such joints had been in common use in the factory of the Crosby company without solder.

Whatever doubt Millett may have had as to the tapered threads on the Bourdon tube making a steam-tight joint, Reed, who was a mechanical expert, admitted that he had entertained none. Moreover, it was admitted that in the old form of their steam gage, that had been manufactured by the Crosby company for years, the threads which secured the steam pipe in the tubular head had always been tapered. These threads correspond with those shown in the drawing of the present application marked "C."

What the inventors then did in making their new device was to taper and thread the two receiving ends of the Bourdon tubes of the gage so as to fit similar threaded openings in the head, and

in the same way to fit the plugs in their several ends for connection with the registering mechanism.

It is well settled that the application of an old device or process to a similar or analogous subject, with no change in the manner of applying it, and no result substantially distinct in its nature, is not patentable, even if the new form of result has not before been contemplated. *Pennsylvania R. Co.* v. *Locomotive Engine Safety Truck Co.* 110 U. S. 490, 494, 28 L. ed. 222, 223, 4 Sup. Ct. Rep. 220; *Howe Mach. Co.* v. *National Needle Co.* 134 U. S. 388, 397, 33 L. ed. 963, 968, 10 Sup. Ct. Rep. 570; *Durham* v. *Seymour,* 6 App. D. C. 78.

Content with their soldered joint as long as the ordinary steam pressure remained low, the appellants did not set to work until the mischief worked by the constant advance to higher pressures in melting the solder demanded a remedy of some kind. They were both competent mechanics, particularly skilled in their practised art. As inventors they must be charged with the knowledge of the unsoldered union joint for steam gages disclosed in the Cowper patent, whether they had actual knowledge of the patent or not. *Derby* v. *Thompson,* 146 U. S. 476, 481, 36 L. ed. 1051, 1053, 13 Sup. Ct. Rep. 181; *Lettelier* v. *Mann,* 91 Fed. 909.

Having considered and rejected the use of union or jam-nut joint, they took up and utilized the tapered joint of their claim. As we have seen, they not only knew that this was in constant use in steam fittings, but had themselves utilized it in their old gage in juxtaposition with the then soldered joints of the Bourdon tubes. Notwithstanding that this substitution of joints in the tube ends may have greatly improved the usefulness of the gage, we are constrained to regard it as showing nothing more than the exercise of mechanical skill. It is not that creative work of the inventive talent which it is the purpose of the patent laws to encourage and reward. *Hollister* v. *Benedict & B. Mfg. Co.* 113 U. S. 59, 73, 28 L. ed. 901, 905, 5 Sup. Ct. Rep. 717; *Durham* v. *Seymour,* 6 App. D. C. 78, and cases cited.

The evidence relating to the superiority of the new gage to the old one and others shows nothing more than that it has given

general satisfaction, and has received general approval as shown by the increased sales of its manufacturer. It falls short of showing that it has displaced all other gages because of its manifest advantages. In these respects, the evidence resembles that in the recent case of *Re Garrett, ante,* 19. As was held in that case, in accordance with the established doctrine in the Supreme Court of the United States, the fact that a new device or construction may have displaced others, by reason of its manifest superiority, is material only when the question of patentable novelty is otherwise a matter of doubt.

Finding no error in the decree dismissing the bill, it will be affirmed with costs. It is so ordered.                *Affirmed.*