Atkinson, J.,
delivered the opinion of the court:
This suit was brought to recover from the United States under an implied contract the sum of $1,000,417.56, which is allaged to be the net profits accruing from the use of a patented device granted to plaintiff, covering a period of 10 years from April 16, 1900, to June 30, 1910. The defendants deny the validity of the patent, as well as the existence of an implied contract in fact for the use of the device by the Post Office Department.
The first question to be considered is the validity of the patent granted by the United States Patent Office to plaintiff for a postage-stamp holder,-dated January 4, 1898, and numbered 596656. Application for a patent on this device was *222 first filed by plaintiff in the Patent Office March 17, 1896, which application was rejected, and an amended request for the issuance of the same was again filed September 14, 1897. Plaintiff, however, claims that he first discovered the utility of his stamp-holder combination in August, 1894, which claim is attested by two witnesses; but this contention, however, is not material to the issues involved in this suit. The court, in determining the validity of the patent, need only consider the matter of dates in so far as it is necessary to determine the relation of plaintiff’s patent to the prior state of.the art when applied to the several similar patented and unpatented devices which are herein involved.
Considering the subject of what an invention is, Walker on Patents, section 23, says:
“Patents are grantable for things invented, and not for things otherwise produced, even where the production required ability of a high order. Novelty and utility must, indeed, characterize the subject of a patent, but they alone are not enough to make anything patentable; for the statute provides that things to be patented must be invented things, as well as new and useful things.”
Hence, to be patentable, an idea or discovery must not only possess novelty and utility, but it must be the product of inventive faculties as w.ell.
Claim 1 of plaintiff’s patents reads as follows:
“A stamp sheet having one series of narrow, unprinted spaces in the body thereof, a second series of spaces wider than the first, along which said sheet is adapted to be stitched, a third series of spaces wider than the first and second series extending around the edges and centrally of said sheet, substantially as described”; and he lays particular stress upon this claim of his patent, alleging therein both novelty and invention.
A mass of evidence and many exhibits have been introduced to shoAV that the form of stamp sheet claimed in his patent involved inventions because of the fact that by this method or form it ivas possible to economically produce large numbers of the stamp booklets by multiple manufacture. The small margin of profit possible in the sale of stamp books made it essential to the success of the device to *223 manufacture them at a minimum of cost. Plaintiff knew this, and his purpose therefore was to secure a patent on such a design of stamp sheet as would achieve this result. His effort, however, to secure acknowledgment of invention in this particular claim by the Patent Office officials met with many rejections, as is shown by the findings.
Whatever particular novelty there is in claim 1 of the patent consists, after five rejections, in adding a third series of spaces to the form of stamp sheet. In his application plaintiff states that “the flaps on the outside and on the inside of the cover F may be dispensed with, if desired, in which case the wide space h in the middle of the sheet of stamps and the flap P' need not be provided.”
It is shown by the proceedings before the examiners of the Patent Office that the claim was allowed only after the introduction of the centrally extending spaces; and yet we find plaintiff alleging in his specifications that the same results can be achieved without these spaces as well as with them.
The Patent Office examiners decided that there was no patentable novelty in claim 1 when the stamp sheet had “ one series of narrow unprinted spaces in the body thereof * * * and another series of wider unprinted spaces (printed in Finding II) need not loe provided. If the third series of spaces wider than the first and second series extending around the edges and centrally of said sheet ”; but in his specifications he states that in the manufacture of his device the wide central space h shown in his sheet of stamps (printed in Finding II) need not be provided. If the third space in his stamp sheet is not essential, then he reverts back to his claim as amended July 18, 1896, as to which the examiner said it “is thought to relate to nothing of patentable novelty differing from the ordinary structure of stamp sheets with their blank margins only in a matter of degree.”
Having failed to get claim 1 of his application through the Patent Office on his claim of a stamp sheet without the third series of spaces, and ivhen the examiners stated in their rejection of this particular claim that “ applicant’s claim can only be read when including the blank margins of *224 the ordinary stamp sheet,” therefore plaintiff, in order to secure a different construction from that of the ordinary known' prior art, added “ a third series of spaces,” but renounces it as necessary or advantageous in the development of his device.
His Exhibit No. 21 printed in Finding II does not show the use of this central wide space because he had voluntarily dispensed with it. It is therefore plainly to be seen that the claim of a third space in the stamp sheet was one of expediency, alleged for the purpose of securing the allowance of claim 1 of his application for a patent, which reveals the fact that his allowed patent for a stamp-book holder was more the result of evolution than invention.
As we have already shown, a device to be patentable must not only possess novelty and utility, but it must also be the product of the inventive faculties. It must not merely show skill, but must evince invention. If, however, the mind advances from the known to the unknown by a transition natural to the ordinary instructed intellect, there is no invention. Eeasoning is not invention. (Merwin on Patentability, pp. 18, 19, 22, 38; Beckendorf v. Faber, 92 U. S., 347.) In a patentable device there must be invention, as distinguished from mechanical or technical skill. Invention is the creation of something new — new not as a mere modification of an idea already existing, but an addition to the stock of ideas. (Merwin, p. 10.)
In further considering the patentable novelty of claim 1 of the plaintiff’s patent, we enter the field of prior art of unpatented devices similar to the plaintiff’s alleged discovery.
It is shown by Finding II that the American Bank Note Co. in manufacturing pocket stamp books for the Western Union Telegraph Co. had knowledge of and had printed and used in booklet form the method of constructing multiple book leaf sheets of stamps, having unprinted cutting spaces and binding spaces, practically similar in all essential respects to plaintiff’s alleged discovery and allowed in his patent, as far back as 1883. It is apparent, therefore, that the narrow, unprinted spaces running through the body of the stamp sheet of defendants’ Exhibit E. A. No. 1 (Finding *225 II) are for the purpose of perforation and also for cutting the sheets into the small book sections of leaves of sis stamps each, the wider spaces running through the sheet being for the purpose of binding stubs for use in binding the leaves of six stamps each into booklets. It is likewise further shown that the Western Union Telegraph Co. sheets were also cut through between the long way of the sections "and then, after collating the required quantity, were stitched together along with an interposed paraffin sheet between each sheet of stamps, and were subsequently split through crosswise of the section and placed in a case or cover.
By referring to the stamp sheet of the Western Union Telegraph Co., a replica of which is printed in Finding II, it appears that the spaces indicated by the “ <z’s ” thereon are the perforated ones, while the spaces marked by “ 5 ” thereon are the cutting divisions. Also the, spaces marked “ 1 ” would be for perforating, and the spaces marked “2” are for cutting and separating the sheets of four stamps one from the other. The part used for a binding margin or stub is the margin at the head of the stamps marked “ a-”
It further appears from the findings that if the permissible method of eliminating the wide central space in the stamp sheets of plaintiff’s claim 1 of his patent, as stated in the specifications therefor, may be done, we would reach an arrangement of stamp sheets under plaintiff’s method of “ one series of narrow unprinted spaces in the body thereof, a second series of spaces wider than the first, along which said sheet is adapted to be stitched,” as compared with which claim the American Bank Note Co. shows that it manufactured a similar multiple stamp sheet booklet with one narrow unprinted space in the body thereof, a second series of spaces wider than the first as early as 1883, which is practically identical with claim 1 in plaintiff’s patent. It will be observed, therefore, by comparison that the stamp sheet manufactured by the American Bank Note Co. (Finding II) is identical, or practically so, with that of plaintiff’s when the wide, centrally located unprinted space is left out of his stamp sheet, as he says may be done if desired, and as *226 he has done in the manufacture of his sheets as shown by the book covers in Finding II.
The Patent Office examiners, after rejecting claim 1, stated that “ only a claim to a specific construction can be allowed,” whereupon plaintiff then inserted a claim for “ a third series of spaces wider than the first and second series extending around the edges and centrally of said sheet.” It was upon this amendment or addition that plaintiff secured his patent, but he states in his specifications that this central unprinted space is not an essential element in the construction of his stamp holders, and need not be used in a successful construction of the device.
A combination is an entirety, and if one of its elements is omitted the thing claimed disappears. Every part of the combination claimed is conclusively presumed to be material to the combination. A patentee makes all parts of a combination material when he claims them in combination and net separately. He can not, therefore, show his invention to be broader or narrower by construction, to prevent anticipation. (Walker on Patents, secs. 176, 181, 182, 186, 339, and 349); Case v. Brown, 2 Wall., 320; Derby v. Thompson, 146 U. S., 476, 482; Wright v. Yuengling, 155 U. S., 47; McClain v. Ortmayer, 141 U. S., 419, 425; Hubbell v. United States, 179, U. S., 77, 82; Water Meter Co. v. Vesper, 101 U. S., 332.)
Plaintiff’s claim 1 of his patent, therefore, necessarily fails for want of patentable novelty and utility by reason of like devices in the prior art.
Claim 2 of the patent reads as follows:
“A stamp sheet having unprinted spaces at intervals in the body thereof and a backing cover for said sheet adapted to be divided into sections to form books, substantially as described.”
The language of this claim is not definite. It was the evident intention of the patentee to form a combination of the stamp sheet as described in claim 1 of the patent, and, as plaintiff says, “a backing cover for said sheet adapted to be divided into sections to form books, substantially as described.” We are, therefore, necessarily referred by the ter *227 minal phrase of the claim, “ substantially as described,” to the specifications and drawings of the patent for enlightenment thereon.
In figure 1 of the patent, as shown in Finding II, we find a sheet of multiple backing covers or book backs. This sheet of backing covers has a series of divisional lines for the purpose of cutting the sheet in order to form small books and for stitching and for forming flaps for the same. Figure B is a view of the backing cover open, with sheets of stamps interposed. Figure 4 is a backing cover opened, showing the two backs, stitched at e' and flap P'. Figure 5 shows the backing cover with flap closed.
Plaintiff says in his specifications, and as there is no definite description in claim 2 in his patent of the backing cover — we must look elsewhere for design — that “the flaps on the outside and on the inside of the cover F (figs. 3, 4, and 5 of his specifications) may be dispensed with if desired.” This is a clear admission that the flap P' is not an essential element to the utility of the backing cover.
The elimination of the flap on the backing cover clearly brings the patent of J. Cussons, No. 414500, granted November 5, 1889, into this case, because of its similarity to plaintiff’s device, and it necessarily raises the question of the prior state of the art relating to patents covering this class of invention. (See cuts in Finding II.) [
Cussons’s claims are:
“ 1. The method herein described of manufacturing blank books, which consists in superimposing a series of unfolded sheets ruled to form the pages of a number of books, placing such unfolded sheets on a back or cover sheet, stitching through the sheets and cover along the folding line of the sheets and cover, then subdividing the whole and folding the subdivided sections along their stitched lines into complete books, substantially as described.
“2. The method herein described of manufacturing advertisement blank books, which consists in printing the advertisements in multiple impressions in rows upon a cover sheet, each row containing the impressions required for a series of complete books, superimposing a series of unfolded sheets, each having multiple impressions in rows one above the other, and each row containing the impressions required *228 for a series of complete books, stitching through the superimposed unfolded sheets and cover along the folding line of the sheets and cover, subdividing the unfolded sheets and cover in two directions on lines extending at right angles to each other, substantially as described.”
Figure 3 of Cussons’s patent shows a sheet of multiple backing covers designed to form six complete small book covers. Plaintiff shows a sheet containing a greater number of backing covers. The difference, therefore, between them is only one of degree. Cussons’s patent states that his sheet is to be divided by cutting along the divisional lines in two directions on lines extending at right angles to one another. Plaintiff subdivides his multiple backing sheet in the same manner. Cussons stitches his sheets and covers before subdividing, and then folds them to form his book. Plaintiff says nothing as to folding cover, which convinces us that he folds along the stitched line shown in figure 4 of his patent so that his single backing cover folded through the center of his book will form an upper and lower cover. Figure 5 of his patent shows clearly a book cover folded in the middle to make the upper and lower covers thereof.
If it should be necessary to further show that Cussons’s patent anticipated the plaintiff’s backing cover, the simple addition of a flap to the Cussons multiple sheet (Finding II) would reveal a true facsimile of plaintiff’s backing cover. As plaintiff admits that the flap on his backing cover is not a necessary element in the construction of his device, he thereby necessarily precludes its patentable novelty, because a backing cover was anticipated by Cussons’s prior art patent.
Claims 1 and 2 of plaintiff’s patent, therefore, necessarily fail for lack of patentable novelty and utility.
Claims 3 and 4 of the patent not being involved in this suit have not been considered; nor have we considered the question of an implied contract in fact or in law between plaintiff and the United States for the use of his device or patent, for the reason we decide that his patent is void and of no effect.
The petition is accordingly dismissed, and judgment is awarded to the United States.