**TEXAS RUBBER & SPECIALTY CORPORATION et al. v. D. & M. MACHINE WORKS et al.**

**No. 7707.**

Circuit Court of Appeals, Fifth Circuit.

Jan. 22, 1936.

Rehearing Denied Feb. 26, 1936.

Jesse R. Stone and Lester B. Clark, both of Houston, Texas., for appellants.

J. Vincent Martin and E. A. Berry, both of Houston, Tex., for appellees.

Before FOSTER and SIBLEY, Circuit Judges, and DAWKINS, District Judge.

SIBLEY, Circuit Judge.

A decree was rendered upholding patent No. 1,718,474 issued June 25, 1929, to John W. McQuaid, for a piston for slush pumps, adjudging infringement by a similar piston made and sold by Texas Rubber & Specialty Company and H. W. Millmine, and awarding injunction and a reference to take an account. This appeal contests the validity of the patent and denies infringement.

During the past two decades oil wells have been drilled to depths sometimes exceeding two miles by the use of hollow drill stems through which very soft mud called "slush" is continuously pumped, passing out below the drill head or auger and carrying the materials cut by the drill head up around the outside of the drill stem to the surface, where the coarser particles are taken out by sedimentation and the slush is used again. Pressures on the pumps of several hundred pounds to the square inch are reached. The slush carries considerable abrasive material which tends to cut out the liners of the pump and destroy the packing of the piston. The present patent presents a piston of rubber molded over a rigid (metal) skeleton composed of a central core or hub, through which the piston rod passes and to which it is secured by nuts, with a flange extending radially from the core nearly to the walls of the pump liner, there being rings and grooves on core and flange into which the rubber is formed and vulcanized to securely hold it. The rubber at the working end of the piston is built up into a ring which protrudes beyond the face of the piston and is made a little larger than the bore of the liner so as to press tightly against it, the rubber behind the ring fitting more loosely. The pistons are usually for double acting pumps so that there is such a protruding ring on each end, the portion of the piston between the two rings being out of contact with the liner. The body of the piston is hard rubber, but the protruding rings are more pliable, so that the liquid in front of the piston in its work stroke presses the ring firmly against the liner, preventing leakage and especially preventing abrasive particles from getting between the piston and the liner to the destruction of both. The rings are not feather-edged, but have an ogee section giving them a greater stiffness and stability. The metal pistons and packing rings which are used in steam and internal combustion engines and in some pumps for smooth liquids were quickly ground away in slush pumps. Rubber was known to be lubricated by water and to withstand abrasion and to make a good seal with a metal pump liner and had long been used in pumps for low pressures. It was also in use in slush pumps for high pressures, but in the form of a mass included between two metal plates which could be squeezed together to force the rubber into close contact with the liner. Such pistons were strong and did the work, but the rubber would wear faster at both ends than at the center of the piston and abrasive matter would collect between the worn portions and the liner or around the confining plates and score the liner so that the slush would soon begin to leak past the piston under the heavy pressure, acting like a sand blast in cutting out the working parts. The McQuaid patent is designed to secure a more perfect prevention of abrasion while retaining a strength equal to the heavy work required.

There are thirty-four claims, all for similar combinations of elements. No particular claims have been singled out as infringed. Claim 14 may be quoted as typical: "A piston comprising a relatively rigid axial core; a relatively rigid radial

flange on the core intermediate its ends; the lateral faces of the flange and the periphery of the core being recessed; a rubber packing member molded on the core, encasing the flange and extending into said recesses; said packing member having a substantially concave periphery and longitudinally overhanging peripheral ends, the end faces· having an ogee curvature adjacent said overhanging peripheral ends." No complete anticipation is shown, but we find every one of the elements of the claim in the prior pumping art. The use of rubber as a packing material, especially in the presence of abrasives, was old. The expanding ring held by pressure against the liner, both in the feather-edge form for slight pressures and ogee form for heavier pressures, was old. The support of the rubber packer by metal was usual and the molding of the rubber over the metal was no novelty. Recesses on the metal to hold the rubber better had been long practiced. Making the protruding rings oversize to keep them in contact with the liner is probably an old practice, though mentioned in no cited patent. Mechanical skill would suggest ˙that in using any compressible packer. If there be invention in the patent, it must be found in the combination of these old elements and their adjustment to the peculiar difficulties to be overcome in deep well slush pumping. It appears that there had been a real problem, that pistons in use were not very satisfactory, and that the McQuaid piston has been found durable and effective and ·has achieved mercantile success both in this and in other countries. The existence of such a problem met by a combination which thus, achieves success we think shows invention sufficient to uphold a patent. Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U.S. 428, 31 S.Ct. 444, 55 L.Ed. 527; Temco Electric Motor Co. v. Apco Mfg. Co., 275 U.S. 319, 48 S.Ct. 170, 72 L. Ed. 298. But a patent granted for such a combination as this is to be narrowly construed, and only those who use just the combination of old elements which McQuaid has claimed, or their plain mechanical equivalents, are to be esteemed as infringers. Derby · v. Thompson, 146 U.S. 476, 13 S.Ct. 181, 36 L.Ed. 1051; Wright v. Yuengling, 155 U.S. 47, 15 S.Ct. 1, 39 L. Ed. 64. We·express, however, no opinion as to the validity of every claim, for they have not been separately argued and examined.

The appellees are making and selling for the same uses a piston on which they have a patent, No. 1,773,629, issued to Millmine August 19, 1930. The claims of this patent emphasize the use, not of a rigid core with a rigid flange on it to support the rubber, but of a plurality of rigid plates dished towards the work ends of the pistons and separated by studs from each other and covered by rubber or other compressible material and held together by the piston rod. We are not concerned with the validity of this patent, but only with the question whether the pistons which are being made and sold ˙under it infringe the prior patent of McQuaid. Since the latter is to be narrowly interpreted, we think there is no infringement. The two pistons indeed are made and operate much alike. Millmine's piston has a metal skeleton with rubber formed over it to make the body of the piston, but the rubber is held to place by lugs on the several plates and by inclusion between the plates themselves rather than by rings and grooves on a core and radial flange. There are the protruding softer rubber lips, with ogee section made oversize, but Millmine uses no central axial core or metallic hub which is specified in each of the combinations claimed by McQuaid. Millmine gets, as he thinks, sufficient rigidity by clamping his separate plates together, studs on one meeting studs on another, with rubber all between; and he claims a shock absorbing ability in his piston because there is no axial core to prevent elastic motion of the rubber towards the center; and he also claims that by omitting the core there is less weight, and an economy in repair because partial replacements of separate plates are possible. Whether there be advantage or disadvantage is immaterial if in fact he has omitted an essential element of the McQuaid claims. Dunbar v. Meyers, 94 U.S. 187, 202, 24 L.Ed. 34; Wright v. Yuengling, 155 U.S. 47, 15 S.Ct. 1, 39 L.Ed. 64; Dry Hand Mop Co. v. Squeez-Ezy Mop Co. (C.C.A.) 17 F.(2d) 465. The "rigid axial core" and "metallic hub" of the claims of the McQuaid patent must be understood to refer to and be explained by the structure set forth in the drawings and specifications. Temco Electric Motor Co. v. Apco Mfg. Co., 275 U.S. 319, 48 S.Ct. 170, 72 L.Ed. 298; American Fruit Growers, Inc., v. Brogdex Co., 283 U.S. 1, 51 S.Ct. 328, 75 L.Ed. 801. If the term "metallic hub" used by itself in some of the claims were sup-

posed to mean any kind of metal structure inside of the rubber, there would not be a sufficient disclosure to practically construct the piston, and a claim thus understood would unquestionably be too broad to be valid. The core or hub shown is a heavy, continuous metal body extending the length of the rubber piston or packing sleeve, and perforated for the reception of the piston rod. The function of the core in several of the claims is stated to be radial reinforcement of the rubber sleeve throughout its length. This axial core or hub is not the basis of, but is omitted from the appellants' piston. In that piston the firmness and solidity due to such a core is exchanged for lightness; and instead of radial support for the rubber sleeve throughout its length, openings between the studs are provided which are claimed to allow an advantageous movement of the rubber radially. If appellants can make a successful piston which omits this element, present and emphasized in the combinations of each of the claims of McQuaid's patent, they are free to do so. That the piston rod for one purpose replaces it is no answer. Blake v. San Francisco, 113 U. S. 679, 5 S.Ct. 692, 28 L.Ed. 1070; Derby v. Thompson, 146 U.S. 476, 13 S.Ct. 181, 36 S.Ct. 1051. There is no infringement.

Prior to August, 1929, appellants were selling agents for appellees of the pistons manufactured under application then pending for McQuaid's patent. The agency was then discontinued by appellees. Appellants sued them for damages as for breach of an exclusive sales contract to last at least for the life of the patent. On a trial the court held that appellants were not licensees under the patent and had no permanent sales contract, and that consequently none had been breached. Appellees now assert that this litigation estops appellants to question the validity of the patent. Since we have held the patent to be valid, the contention is without importance, but we find no force in it. The validity of the patent was not in issue or determined in the former suit, so that there is, of course, no res adjudicata. So long as appellants claimed rights under the patent, they could not attack it, but they were adjudged to have no interest under it. Having obtained no advantage or benefit from the contention of their suit (if indeed it amounted to a claim under the patent rather than a claim of a personal contract to sell goods which were supposed to be patented), we find no basis for an estoppel now to dispute the patent. Having been successfully excluded by appellees from its benefits, appellants are as free as any one else to attack the patent and to make and sell pistons which do not infringe it.

The judgment is reversed and the cause remanded with direction to dismiss the bill.